[Crim. No. 9342.    Second Dist., Div. Two.    Dec. 16, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. THEOPOLIS
FELIX BAKER, Defendant and Appellant.

Herbert E. Selwyn, under appointment by the District
Court of Appeal for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was convicted in a nonjury trial of violating Penal Code, sections 211 (robbery) and 209 (kidnaping for purposes of robbery), and on June 21, 1963, sentenced to imprisonment for the term of his natural life. On August 26, 1963, the judgment was amended *nunc pro tunc* to read "life imprisonment without possibility of parole." This appeal is from the amended judgment.

On November 28, 1962, Wallace Reinsmith loaded his truck with 129 cases of whiskey at berth 189, Wilmington Harbor. Appellant accosted Reinsmith, the victim, and pointing a gun at him, asserted it was a "hi-jack" and ordered Reinsmith to drive up the dock approximately 100 yards at which point a second man joined them. The truck was parked and Reinsmith was ordered by appellant into the back of the truck and told if he cooperated, he wouldn't be hurt, and that he would be released further down the road.

Approximately one hour later, while the truck was progressing eastward on the San Bernardino freeway, Reinsmith succeeded in opening the rear door of the truck and sought to attract the attention of passing motorists, first by waving to the traffic and then by throwing cases of whiskey out of the truck.

Appellant's accomplice, the second man who joined appellant as previously mentioned, was following the truck in a station wagon and was recognized by Reinsmith as Reinsmith performed the maneuvers above described. The accomplice thereupon pulled alongside of the front of the truck and advised appellant what Reinsmith was doing. Appellant concurrently with the receipt of said information, slowed down to 20 miles per hour, whereupon Reinsmith jumped from the truck onto the freeway, and as a consequence injured his shoulder and knee.

The truck was abandoned by appellant. Inspection thereof uncovered a jacket identified as appellant's. The jacket contained several pieces of paper, one of which had appellant's name and address. The station wagon driven by appellant's accomplice was traced through its license number to appellant's brother who had loaned it to appellant that morning.

Appellant contends that the bodily harm suffered by Rein-

smith as a result of the jump from the truck is, as a matter of law, not the type of bodily harm which, under section 209 of the Penal Code, aggravates the crime of kidnaping so as to require the imposition of the additional penalty which eliminates the possibility of parole.

Appellant asserts that it was the bodily injury suffered by the victim as a consequence of his escape which prompted the trial court to sentence him to life imprisonment without possibility of parole, and that the judgment therefore should be modified to eliminate this additional penalty.

Respondent argues that the injuries received were the proximate cause of the threats of harm made by appellant; and relies on *People* v. *Monk,* 56 Cal.2d 288 [14 Cal.Rptr. 633, 363 P.2d 865].

In *Monk, supra,* at page 296, the victim jumped from a moving car, into which she had been forced, after Monk threatened to criminally attack her. The court held: ''Although the defendant did not touch [the victim], it is apparent that his conduct in threatening her with serious bodily harm put her in fear and was the proximate cause of her jumping out of the automobile and of her consequent injuries. While no cases have been found involving kidnaping for the purpose of robbery where the bodily harm was not directly inflicted by the accused upon his victim, we are persuaded that the doctrine of proximate causation is applicable in a case such as the present one where the defendant's threats of bodily harm cause his victim to receive injuries in an attempt to escape therefrom.''

In *Monk* there were two kidnapings. In the first treated by the opinion, bodily harm was suffered by one of the victims in the manner hereinabove indicated. In respect of the second victim discussed in *Monk,* the facts are so shocking, that it is obvious why the Legislature provided a penalty of death or life without possibility of parole in situations where ''. . . the person . . . subjected to such kidnaping suffers . . . bodily harm . . . .'' (Penal Code, § 209.)

Assuming that the added penalty in *Monk* was proper even in respect of the first victim, that case must be read in light of *People* v. *Jackson,* 44 Cal.2d 511 [282 P.2d 898], wherein the court pointed out that the Legislature intended a stricter penalty only where the kidnaper inflicted bodily harm unnecessarily. It appears that there was an attempt to draw a distinction between those injuries that are inherent in a forcible kidnaping and those injuries not inherent in the

crime itself, but which are gratuitously added by the kidnaper to abuse and terrorize his victim.

In *Jackson, supra,* at page 515, the court says: "Section 209 of the Penal Code, which prescribes the punishment for the crime of kidnaping [for ransom, reward, extortion or robbery], was amended in 1933 to provide that one convicted of that crime 'shall suffer death or shall be punished by imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm.' The 1933 amendment (stats. 1933, p. 2617) was patterned after the federal Lindbergh Law, which authorizes the imposition of the death penalty for kidnaping except when the victim has been liberated 'unharmed.'

"The uncertainties of the federal statute were the subject of comment in *Robinson* v. *United States,* 324 U.S. 282 [65 S.Ct. 666, 89 L.Ed. 944], involving a prosecution under that act. There the evidence showed that the victim had suffered injuries from two violent blows on the head with an iron bar and abrasions to the lips from repeated applications of tape. Reading the word 'unharmed' as meaning 'uninjured,' the Supreme Court stated: 'Two possible reasons suggest themselves . . . as to the motivation of Congress in making the severity of a kidnapper's punishment depend upon whether his victim has been injured. The first reason is the old belief that the severity of the injury should measure the rigor of the punishment. If this be the reasoning implicit in the statute, it would appear that Congress intended that for a kidnapper to obtain the benefit of the proviso he must both liberate and refrain from injuring his victim. Congress may equally have intended this provision as a deterrent, on the theory that kidnappers would be less likely to inflict violence upon their victims if they knew that such abstention would save them from the death penalty. This assumption finds some slight support in the legislative history, is not contested by the government, [and] has been accepted in one case. [*United States* v. *Parker,* 19 F.Supp. 450, 103 F.2d 857]. . . . The quality of the injury to which Congress referred is not defined. It may be possible that some types of injury would be of such trifling nature as to be excluded from the category of injuries which Congress had in mind. We need indulge

in no speculation in regard to such a category. The injuries inflicted upon this victim were of such degree that they cannot be read out of the Act's scope without contracting it to the point where almost all injuries would be excluded.' (Pp. 283-285.)

"Similar uncertainty exists as to the precise meaning of the words 'bodily harm' in section 209 of the Penal Code, to which the Legislature has given no definition. One construction of the statute was based upon the assumption of a legislative intent to adopt the traditional meaning given those words in the context of an action in tort for a battery. (*People* v. *Tanner,* 3 Cal.2d 279 [44 P.2d 324].) Said the court, *'Bodily harm* is generally defined as "any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person." ' (P. 297.) This definition was restated in subsequent opinions, but in both the *Tanner* case and those which followed it, the victim of the kidnaping suffered serious bodily harm. (*People* v. *Tanner, supra,* [victims bound with wire, tortured and nearly suffocated]; *People* v. *Britton,* 6 Cal.2d 1, 3 [56 P.2d 494] [victims bound with wire and one of them struck on the head]; *People* v. *Brown,* 29 Cal.2d 555, 559 [176 P.2d 929] [victim forcibly raped and struck by defendant]; *People* v. *Chessman,* 38 Cal.2d 166, 185 [238 P.2d 1001] [forcible rape and a violation of section 288a of the Penal Code].)"

The court in *Jackson* noted that there would be no deterrent to killing the victim of a kidnaping if there were no distinction between injuries inherent in a crime and gratuitous physical abuse which are in no respect inherent in the crime but are separate and apart from it. The court in *Jackson* also questioned the definition laid down in the prior cases which it cites, that bodily harm is any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, and pointed out in each cited case following the stated rule that the victim had suffered unnecessary and gratuitous bodily harm in the form of physical striking and torture administered by the criminal.

Any victim of any crime and certainly one held up at the point of a gun or forcibly kidnaped has a right to resist or to escape. There can be no doubt that an armed robber who shoots and kills a victim who resists or attempts to escape is guilty of murder, nor is there any doubt in our mind that if the victim in the case at bench had, in the process

of escaping, suffered injuries which proximately caused his death, that the kidnaper in the case at bench would be guilty of murder. This is not to say that there can be no added crime short of the death of the victim. It is probably true that the consequence of any escape or attempt to escape victimization of a specific crime can result in other added and different crimes. The crimes here charged, however, are robbery, Penal Code section 211, and kidnaping, Penal Code section 209.

Injuries received by Reinsmith were a direct result of the robbery-kidnap (*People* v. *Harrison,* 176 Cal.App.2d 330 [1 Cal.Rptr. 414].) If they had been inflicted directly or proximately caused by appellant by threats or bodily harm as in *Monk, supra,* instead of self-inflicted as a result of the victim's attempt to escape, such injuries could be considered a gratuitous aggravation of a completed crime. Other than the inference implicit in every kidnaping that the criminal will not permit his victim to escape, the evidence in the case at bench is completely lacking even remotely of any act by the kidnaper of bodily harm to the victim or any gratuitous threat of bodily harm made by the kidnaper to the victim before he jumped from the truck, thus aggravating an already completed crime. The bodily harm suffered by the victim in the case at bench was not the result of any intentional gratuitous aggravation of the completed crime by the kidnaper, nor was it suffered as a consequence of an actual threat of gratuitous aggravation of the completed crime. In our opinion, the type of bodily harm suffered by the victim in this case is not the type of bodily harm intended to be included in the statute.

We are not here discussing a separate or added crime. In respect of the charged crime of kidnaping, we do not believe that "bodily harm" within the meaning of section 209 of the Penal Code is intended to include as an aggravation of the specific crime of kidnaping self-inflicted injuries suffered by a victim as a consequence of an escape or attempt to escape.

Appellant also contends that the trial court was without jurisdiction, since berth 189 at Wilmington is under the exclusive jurisdiction of the federal government. The record however shows that much of the continuing offense occurred throughout other portions of Los Angeles County wholly outside of the port area. Further, it was incumbent upon appellant to have raised this point in the trial court as

part of his defense. Appellant's failure to raise the point in the trial court is fatal. (*People* v. *Allen,* 172 Cal.App.2d 520, 522 [342 P.2d 368].)

Appellant also urges that the United States Supreme Court has in effect held that the first eight amendments apply to the states, including therein the right to indictment for a criminal offense by a grand jury. In the case at bench, proceedings were by way of information and preliminary hearing. Until *Hurtado* v. *California,* 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232], is overruled, we deem such proceeding more than adequate. In our opinion, proceeding by way of information and preliminary examination is more substantial due process than proceeding by way of indictment.

Finally, appellant urges that extrajudicial statements which were admitted in evidence, made by appellant to Mr. Light, a U.S. Custom's official, were inadmissible and cites as authority the rule announced in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado,* *(Cal.) [40 Cal.Rptr. 264, 394 P.2d 952], in respect of which latter case a rehearing is now pending. There is no merit in this contention. The record shows that on December 10, 1962, after appellant had voluntarily given himself up, he had a conversation with Mr. Light. Mr. Light advised appellant that the records of the motor vehicle department showed that a station wagon used by appellant's accomplice belonged to appellant's brother. Appellant replied that he had borrowed the station wagon at 9:30 a.m. and returned it at 4:30 p.m. on the 28th of November; that he had not been in the harbor area on the 28th, and had not loaned the car to anyone on that date. This conversation was related by Mr. Light at the preliminary examination of appellant and appellant stipulated that it could be used as evidence at his trial.

Appellant testifying in his own defense, stated that he had possession of the station wagon at all times during November 28. Appellant's brother-in-law, Edison Moncrief, testifying at the trial for the prosecution, said that he loaned the station wagon to appellant at about 9 a.m. on November 28, and that appellant returned it to him between 4:30 and 5 p.m. of the same day.

We see no similarity between the facts above recited and

---

*A rehearing was granted on September 24, 1964; the final opinion, filed January 29, 1965, is reported in 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

those in *Escobedo* or in *Dorado*. There is nothing in the present record to indicate that appellant expressed any desire to see an attorney or that he desired to remain silent. Appellant voluntarily entered the police station and voluntarily made the statements referred to, which are of an exculpatory nature rather than incriminating. *Dorado* is still pending, but even if under *Dorado* appellant had the right to be informed of his right to counsel, and to remain silent, there is not even now a contention either in the briefs or in a supplementary letter which appellant was permitted, after oral argument, to file in aid of his briefs, that appellant was deprived of this right.

The judgment is modified so as to eliminate therefrom the addition ''without possibility of parole.'' In all other respects judgment is affirmed.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

The petitions of the respondent and the appellant for a hearing by the Supreme Court were denied February 10, 1965. Mosk, J., did not participate therein.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.