[Crim. No. 6879. Third Dist. July 19, 1973.]

In re MIKE MASTON on Habeas Corpus.

[Crim. No. 6903. Third Dist. July 19, 1973.]

In re ISREAL NELL HOWARD on Habeas Corpus.

(Consolidated Cases.)

[REDACTED]

**COUNSEL**

Clyde M. Blackmon, under appointment by the Court of Appeal, and Blackmon, Isenberg, Moulds & Blicker, for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Edward W. Bergtholdt, Peter J. McBrien, Arnold O. Overoye and Jeffrey A. Joseph, Deputy Attorneys General, for Respondent.

**OPINION**

**FRIEDMAN, J.**—Penal Code sections 207 and 208 prescribe a prison sentence of one to 25 years for "simple" kidnaping. Section 208 establishes life imprisonment as punishment for kidnaping for the purpose of ransom or robbery and, if the victim suffers bodily harm, calls for a life sentence without possibility of parole. Section 190 imposes a life sentence for first degree murder but does not deprive the offender of parole.[1] A person serving a life sentence for first degree murder may be paroled after seven years' imprisonment (Pen. Code, § 3046).

In November 1960 petitioners Howard and Maston, in company with a third man, kidnaped, beat, robbed and raped a woman. In February

---

[1]Death penalty alternatives in sections 209 and 190 are unconstitutional in view of *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726]. California law on the death penalty is in a state of flux. See California Constitution, article I, section 27, approved November 7, 1972; *People* v. *Anderson* (1972) 6 Cal. 3d 628 [100 Cal.Rptr. 152, 493 P.2d 880].

1961 Howard and Maston pleaded guilty to kidnap-robbery with bodily harm. They did not receive the death penalty. The court sentenced them to prison for life without possibility of parole. The circumstances of the crime are described in an earlier denial of habeas corpus, *sub nom. In re Howard* (1971) 21 Cal.App.3d 318 [98 Cal.Rptr. 531].

Petitioners now seek habeas corpus, contending first, that life imprisonment without possibility of parole is a cruel or unusual punishment in violation of article I, section 6, of the California Constitution, and second, that it violates the Fourteenth Amendment guarantee of equal protection of the laws. The two petitions present identical issues; hence we consolidate them for decision. In support of the first contention, petitioners rely upon *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]. In *Lynch* the California Supreme Court invalidated a second-offender sentence for indecent exposure with a theoretical maximum of life imprisonment. *Lynch* recognizes that the selection of penalties for various crimes is primarily an exercise of legislative judgment; nevertheless, that a punishment may violate article I, section 6, "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (8 Cal.3d at p. 424.)[2]

So stated, the disproportionate punishment rule declared in *Lynch* offers much leeway for judicial subjectivity. The *Lynch* opinion points to three

---

[2]Earlier, in *People* v. *Cleveland* (1972) 27 Cal.App.3d 820 [104 Cal.Rptr. 161], a California appellate court had rejected judicial inquiry into the constitutionality of the life sentence without possibility of parole for kidnap-robbery with injury. Because it antedated *In re Lynch, supra,* that phase of the *Cleveland* decision has no precedential value.

In footnote 45 of *People* v. *Anderson* (fn. 1, *supra*) the California Supreme Court invited the substitution of life sentences without possibility of parole where convicted kidnapers were to be relieved of the now-invalid death penalty. The invitation has been viewed as implied support for constitutionality of the kidnaping-with-bodily-harm penalty. (*People* v. *Cleveland, supra.*) The *Anderson* decision pre-dated *Lynch* and made no attempt to assess constitutionality of the kidnaping sentence by the standards later announced in *Lynch.* We doubt that the Supreme Court intended footnote 45 of the *Anderson* decision as a constitutional seal of approval on the deprivation of parole for kidnapers.

Mention should be made of another decision of questionable precedential value. *In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902], rejected a "cruel or unusual punishment" attack upon a recidivism statute calling for life imprisonment without possibility of parole. The decision turned upon the thesis that parole was merely a favor or privilege, a notion which is now fairly archaic. (See *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) The *Rosencrantz* case failed to consider the constitutional factors enjoined by *In re Lynch, supra.* The court's failure was particularly poignant for Mrs. Rosencrantz, who was in San Quentin for life without possibility of parole as a result of her fourth NSF check violation

relatively objective criteria: first, the nature of the offense and offender, with particular regard for the degree of danger both present to society; second, a comparison of punishments in the same jurisdiction for different offenses which, by the first test, must be deemed more serious; third, a comparison with punishments for the same offense in other jurisdictions having a similar constitutional inhibition.

The threefold *Lynch* formula focuses on the preventive objectives of criminal punishment. It accepts at face value the deterrent efficacy of the traditional assumptions underlying the statutory hierarchy of penalties. These are: first, that the entire system serves as a general deterrent to criminal behavior; second, that a particular punishment's inhibitory effect on would-be offenders increases in direct ratio to the punishment's severity. Skyrocketing crime rates demand reexamination and empirically supported analyses of these assumptions, particularly the second.[3] For the purpose of this opinion we accept these assumptions but do not wish to be charged with unawareness of their disputability.

Underlying the three criteria of disproportionate punishment prescribed by *Lynch* is a central idea: the social utility of the particular penalty. Thus the *Lynch* opinion (8 Cal.3d at p. 422) quotes various judicial writers who speak of the *penal purpose,* the *valid legislative purpose,* the *necessity* of the particular penalty. The penalty's purpose or necessity is that discerned initially by the Legislature. Its purpose may be rooted in tradition rather than deliberation; may be more or less realistic, more or less debatable. The choice is "a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, . . ." (*In re Lynch, supra,* 8 Cal.3d at p. 423.) Presented with a rational basis for the choice, the courts should hesitate to call the penalty cruel or unusual.

Until 1933, life imprisonment was the maximum penalty available under section 209. A 1933 amendment produced the alternative penalties of death or life imprisonment without parole where the kidnap victim suffered bodily harm. The 1933 amendment was a California reaction to the epidemic of nationally publicized kidnapings following the famous Lindbergh kidnap-murder. Parallel amendments occurred in the federal kidnaping statute and the laws of many states. Many such laws called for extreme penalties when the victim was physically harmed, lesser penalties

---

[3]See President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967) pages 141-142; Morris and Hawkins, The Honest Politician's Guide to Crime Control (1969) pages 253-262; Packer, The Limits of the Criminal Sanction (1968) pages 9-70. The last-named work contains a bibliographical note, page 369 et seq., including classic critiques of deterrent theories of punishment.

when he was not.[4] The Federal Kidnapping Act was amended in 1934 to provide for the death penalty, but withheld it "if, prior to its imposition, the kidnapped person has been liberated unharmed, . . ."[5] Both the federal and California Supreme Courts recognized the augmented penalty's purpose to deter the kidnaper from harming his victim, to induce him to release the victim unharmed. (*Robinson* v. *United States* (1945) 324 U.S. 282, 284 [89 L.Ed. 944, 946, 65 S.Ct. 666]; *People* v. *Jackson* (1955) 44 Cal.2d 511, 517 [282 P.2d 898].)

Arguments against the augmented penalty are available. One might urge that it encourages the kidnaper to kill his victim to prevent identification; that it rejects the rehabilitational objective of enlightened penology; or that kidnapers rarely consult the Penal Code. Absent empirical proof, such debates eventually wind up in a draw. (See *People* v. *Anderson, supra,* 6 Cal.3d at p. 652.) The arguments for and against the social utility of the augmented penalty are settled by the Legislature's choice. Section 209 evinces a legislative hope that the augmented penalty may in some cases prevent physical harm. Even though it meets with as much failure as success, the hope is rational.

With only minor supplementation, these preliminary observations supply a response to the first of the three tests described in *Lynch*. By legislatively and judicially recognized contemporary standards, kidnaping is one of the most serious of all crimes. (See *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1133 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *People* v. *Levy* (1965) 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842].) By its very nature it involves violence or forcible restraint. As section 209 is now interpreted, trivial or insubstantial bodily harm incidental to all forcible kidnaping does not evoke the aggravated penalty of parole deprivation; only a substantial injury does so. (*People* v. *Daniels,* 71 Cal.2d at p. 1133; *People* v. *Jackson, supra,* 44 Cal.2d at pp. 516-517.) Kidnapings for ransom are coldly planned, deliberate schemes. They are still endemic to the American scene. Kidnapings for robbery often involve far less deliberation. Under current California law a person is not guilty of kidnaping for robbery where the victim's movement is only incidental to the robbery and does not substantively increase the risk of bodily harm. (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1139.) Thus kidnaping for robbery possesses elements of deliberation comparable to those of kidnaping for ransom. Both elicit a life sentence; the augmented penalty of parole deprivation for

---

[4]We document this statement, however briefly, at a later point in this opinion.

[5]48 Stat. 781, former 18 United States Code Annotated section 408a. The current federal kidnaping statute has been extensively revised. (18 U.S.C.A. § 1201.)

bodily harm is designed to prevent, *insofar as possible,* a real social danger. The augmentation easily survives the first of the constitutional tests.

The intrastate and interstate comparative studies enjoined by *Lynch* supply no basis for a finding of excessiveness. Penalty provisions attached to a number of serious California crimes permit the offender's eventual parole: first degree murder (Pen. Code, § 190); certain assaults by life prisoners (Pen. Code, § 4500); causing an explosion which results in great bodily injury (Pen. Code, § 12310); or sabotage with death or injury (Mil. & Vet. Code, § 1672, subd. (a)). Other statutes, of unknown constitutionality, call for the death penalty only: treason (Pen. Code, § 37); perjury in a "capital" case (Pen. Code, § 128); and certain assaults by life prisoners (Pen. Code, § 4500). The habitual criminality statute (Pen. Code, § 644) calls for a life sentence but without parole deprivation. Only train wrecking, like aggravated kidnaping, may elicit a life sentence without possibility of parole (Pen. Code, § 219).

As the *Lynch* case recognizes (8 Cal.3d at p. 426), grading offenses by their comparative gravity provides no definitive answer; at worst, it makes the challenged penalty suspect. One might postulate that treason is the most "serious" of all crimes because it aims at the state, the temporal source of the community's safety; that life is the second most exalted value protected by the criminal laws; thus, that first degree murder is more "serious" than aggravated kidnaping. Obviously, the murderer's sentence of life with possibility of parole is less severe than the kidnaper's sentence of life without that possibility. (*People* v. *Milan* (1973) 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956].)[6]

The aggravated kidnaping statute is part of an anomalous substructure of California penal law. Premeditated kidnaping which injures but does not kill elicits a heavier penalty than premeditated murder. A robber who kills but does not kidnap retains hope of eventual parole; the robber who abducts and merely injures is deprived of that hope. A rapist who kidnaps and injures but does not rob his victim is guilty of "simple" kidnaping, a crime punishable by one to 25 years' imprisonment (Pen. Code, §§ 207-208); if the offender robs but does not rape her, he suffers life imprison-

---

[6]Petitioners' claim that California punishes the kidnaper more severely than the murderer does not depend upon the 1972 decisions invalidating the death penalty. In actual fact, California has since 1933 provided a penalty which, in composite, exposes the kidnaper who inflicts bodily harm to harsher penalties than the murderer. For many years first degree murder was punishable by death or by life imprisonment with possibility of parole; after 1933, kidnaping with bodily harm evoked the alternatives of death or life imprisonment without possibility of parole. The imbalance, if it is one, antedated invalidation of the death penalty.

ment without possibility of parole. In the spectrum of human values, one asks whether the victim's pocketbook is more precious than her security from sexual violation. These anomalies of the penal law acutely need legislative attention.

The constitutional problem is sharpened because section 209, in contrast with many other penal provisions, supplies no alternative below its maximum sentence. When its conditions are met, a life sentence without possibility of parole is mandatory. *In re Lynch* directs constitutional scrutiny of the maximum statutory punishment, not its fitness as applied to the individual offense and offender. (8 Cal.3d at pp. 416-419.) Unusual twists of fact occur where, for lack of a sentencing alternative, the offender's punishment is grossly disproportionate to the circumstances. (See *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544]; *People* v. *Wein* (1958) 50 Cal.2d 383, 423-428 [326 P.2d 457], dissent of Carter, J.; Packer, *Making the Punishment Fit the Crime* (1964) 77 Harv. L.Rev. 1071, 1077.) A number of California decisions have wrestled with kidnapings where the physical harm was accidental or not directly inflicted. (*People* v. *Monk* (1961) 56 Cal.2d 288, 296 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Cleveland, supra,* 27 Cal.App.3d at p. 830; *People* v. *Dacy* (1970) 5 Cal.App.3d 216, 221 [85 Cal.Rptr. 57]; *People* v. *Frogge* (1969) 270 Cal.App.2d 106, 117-119 [75 Cal.Rptr. 517]; *People* v. *Baker* (1964) 231 Cal.App.2d 301, 306 [41 Cal.Rptr. 696, 11 A.L.R.3d 1046].) Petitioners, as we understand their argument, do not claim disproportionate punishment in relationship to their individual offense. In any event, the claim is unavailable. As this court implied in *In re Howard, supra,* 21 Cal.App.3d at page 321, petitioner's crime was not a "technical" kidnaping in which the victim's movement and injury were incidental to the robbery; nor were her injuries accidental. Beyond abducting their victim, raping and robbing her, they forcibly transported her for many miles and severely beat her. Their conduct entered within the core area of culpability defined by section 209, not its periphery. (See *People* v. *Daniels, supra,* 71 Cal.2d at p. 1139.)

As we understand the intrastate comparisons directed by *Lynch,* asymmetry in the scale of penalties arouses constitutional alertness but breaches the cruel or unusual punishment clause only if it lacks a rational basis. As we observed earlier, the augmented kidnaping penalty serves a rationally conceived penal purpose. Despite anomalies in the structure of surrounding laws, the penalty is not disproportionate by the standards of internal California comparisons.

We are indebted to the attorneys on both sides for painstaking surveys of the laws of other American jurisdictions. The Lindbergh laws of the

1930's have left an imprint on the penal codes of most states. A majority of the states permit life imprisonment of kidnapers for ransom or robbery. Fifteen states, including California, provide augmented penalties when the kidnaper inflicts physical harm. In addition to California, the states of Arizona, Florida, Iowa, Nevada, Louisiana, Pennsylvania and West Virginia describe circumstances under which aggravated kidnaping is punishable by life imprisonment without possibility of parole. The California law is among the most severe in the nation because it provides no alternate sentence. We interpret the *Lynch* case to authorize constitutional interference only for gross excessiveness in relation to the rest of the nation. The augmented California sentence is not so out of line with the scale of punishments throughout the nation that a court may call it either cruel or unusual.

Petitioners' charge of a denial of equal protection disappears with the recognition of a rational basis for the augmented penalty. (*In re Herrera* (1943) 23 Cal.2d 206, 212 [143 P.2d 345].)

The petitions for habeas corpus are denied and the orders to show cause discharged.

Richardson, P. J., and David, J.,* concurred.

Petitioners' application for a hearing by the Supreme Court was denied September 6, 1973. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.