[Crim. No. 8001. Third Dist. Feb. 2, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH W. ISITT, Defendant and Appellant.

**COUNSEL**

Philip M. Farley, under appointment ·by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi, Peter J. McBrien, Eddie T. Keller and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—Defendant Ralph W. Isitt, plead guilty to kidnaping for robbery with bodily harm (Pen. Code, § 209),[1] robbery in the first degree

---

[1] All section references hereinafter are to the Penal Code.

(§§ 211, 211a) and assault to rob (§ 220). He was charged with and admitted being armed with (§§ 3024 and 12022) and having used (§ 12022.5) a firearm in the commission of each offense. He was sentenced to the state prison for each offense for the terms prescribed by law as augmented by the above indicated provisions relating to possession and use of a firearm. Since the offenses all involved the same victim and constituted parts of a single transaction, the trial court ordered the "Execution of sentences relative to [robbery and assault to rob] . . . suspended at this time." (§ 654.) Defendant is thus serving a term of imprisonment for life without possibility of parole (§ 209), "augmented" by the provisions of sections 12022 and 12022.5.[2]

On appeal, defendant challenges the constitutionality of the term of imprisonment—life without possibility of parole—imposed for kidnaping for robbery with bodily harm, contending that it constitutes cruel and unusual punishment (Cal. Const., art. I, § 6) and denies him equal protection of the law (U. S. Const., Amend. XIV). Additionally, defendant asserts that the trial court erred in declining to apply the provisions of section 1202b to his sentence.

## I.

Recently this court had occasion to consider a constitutional attack upon the punishment for violation of section 209 with bodily harm identical to that maintained in the present appeal. (*In re Maston* (1973) 33 Cal.App.3d 559 [109 Cal.Rptr. 164], hg. den.) Applying the criteria announced in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], we rejected the constitutional challenge. For similar reasons we reject the identical claims here.

The statutory penalty for violation of section 209, unlike the penalties under scrutiny in *In re Lynch, supra,* 8 Cal.3d 410, *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], *People* v. *Wingo* (1975) 14 Cal.3d 169 [121 Cal.Rptr. 97, 534 P.2d 1001] and *In re Rodriguez* (1975)

[2]The merger of terms of imprisonment effected by section 669 does not prevent "augmentation" of a natural life sentence by application of section 12022.5 (*People* v. *Johnson* (1974) 38 Cal.App.3d 1, 10-11 [112 Cal.Rptr. 834]). However, where a single judgment imposes sentences for several crimes committed upon a single occasion, only one finding under section 12022.5 is permissible. (*Id.*, at pp. 11-12.) In any event, section 12022.5 does not, in terms, apply to the crime of assault to rob (see *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 548-549 [108 Cal.Rptr. 792]); neither is section 12022 applicable to the crime of armed robbery (*People* v. *Floyd* (1969) 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862]).

14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384], does not fall within the provisions of the indeterminate sentence law (§ 1168; *People* v. *Vaile* (1935) 2 Cal.2d 441, 445 [42 P.2d 321]). Accordingly, we are limited to an inquiry whether the maximum term mandated by law is constitutionally disproportionate to the offense of aggravated kidnaping. Our consideration of this issue commences with the recognition that kidnaping for robbery involves "a single mode of behavior" (*People* v. *Wingo, supra,* 14 Cal.3d at p. 176). A brief summary of decisions interpreting section 209 will suffice to demonstrate that proposition.

■ An element of the crime of kidnap for robbery is the specific intent to rob. (*People* v. *Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145]; *People* v. *Smith* (1963) 223 Cal.App.2d 225, 232 [35 Cal.Rptr. 719].) That crime, however, is not committed unless the intent is formed before the kidnap commences (*People* v. *Tribble* (1971) 4 Cal.3d 826, 829 [94 Cal.Rptr. 613, 484 P.2d 589]) and the asportation is undertaken with that intent and purpose in mind (*People* v. *Thornton* (1974) 11 Cal.3d 738, 769-770 [114 Cal.Rptr. 467, 523 P.2d 267]).

■ To constitute a kidnap for robbery, the asportation of the victim must be accomplished by force or threat of force. The use of fraud or deceit to induce the movement is insufficient. (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 659-660 [111 Cal.Rptr. 556, 517 P.2d 820]; *People* v. *Rhoden* (1972) 6 Cal.3d 519, 527-528 [99 Cal.Rptr. 751, 492 P.2d 1143].) *A fortiori,* movement of the victim with his consent does not constitute kidnaping (*People* v. *Rhoden, supra,* at p. 526; *People* v. *Mayberry* (1975) 15 Cal.3d 143, 153-154 [125 Cal.Rptr. 745, 542 P.2d 1337]). Furthermore, the defendant's reasonable good faith belief that the victim has voluntarily consented to accompany him constitutes a complete defense to the charge of kidnaping. (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 155.)

■ Moreover, the crime of kidnap for robbery is not committed where the movement of the victim is only incidental to the commission of the underlying crime of robbery. To constitute the crime of kidnap for robbery the movement of the victim must be such as to increase substantially the risk of harm to the victim over and above that necessarily present in the crime of robbery itself. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139-1140 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) A slight increase in the risk of harm will not suffice. (*People* v. *Cleveland* (1972) 27 Cal.App.3d 820, 825 [104 Cal.Rptr. 161].) Movement incidental to the robbery within the premises in which the

victim is initially accosted does not necessarily create a substantial increase in the risk of harm. (*People* v. *Mutch* (1971) 4 Cal.3d 389, 398 [93 Cal.Rptr. 721, 482 P.2d 633].) Neither does movement of the victim to a place obscured from public view in itself substantially increase the risk of harm. (*In re Crumpton* (1973) 9 Cal.3d 463, 467 [106 Cal.Rptr. 770, 507 P.2d 74].) Even movement of the victim·more extended than that incidental to the commission of a robbery does not fall within the ambit of the crime of kidnap for robbery unless it also substantially increases the risk of harm to the victim beyond that inherent in the crime of robbery. (*In re Earley* (1975) 14 Cal.3d 122, 127-128 [120 Cal.Rptr. 881, 534 P.2d 721].)

As can be seen, the crime of kidnap for robbery does not embrace a broad spectrum of unlawful conduct. Even so, within the offense as narrowly defined, rational gradations of culpability can be made based on the amount of harm to the victim. (See *In re Foss, supra,* 10 Cal.3d at p. 919.) They have been supplied by the Legislature. The statute provides differing penalties escalated in proportion to the degree of harm inflicted upon the victim. ■ Section 209, as recently amended (Stats. 1973, ch. 719, § 8, p. 1300), provides for the penalty of death when the victim suffers death, life imprisonment without parole when the victim suffers bodily harm and life imprisonment with possibility of parole when the victim is unharmed.

The bodily harm which evokes parole ineligibility must be more than mere trivial harm. (*People* v. *Jackson* (1955) 44 Cal.2d 511, 517 [282 P.2d 898]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 711 [47 Cal.Rptr. 909, 408 P.2d 365].) It must amount to substantial bodily injury (*People* v. *Daniels, supra,* 71 Cal.2d at pp. 1133-1134) attributable to other than the force necessary to accomplish a forceable asportation (*People* v. *Reed* (1969) 270 Cal.App.2d 37, 49 [75 Cal.Rptr. 430]). If not directly inflicted by the kidnaper, it must be the proximate result—the reasonably foreseeable consequence—of defendant's intentional acts. (*People* v. *Monk* (1961) 56 Cal.2d 288, 296 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Dacy* (1970) 5 Cal.App.3d 216, 220-221 [85 Cal.Rptr. 57]; *People* v. *Reed, supra,* 270 Cal.App.2d at pp. 48-50.)[3]

---

[3]"It takes but little imagination to envision the kind of violent events whose likelihood of occurrence is great in a situation of this kind. Ready examples include not only desperate attempts by the victim to extricate himself but also unforeseen intervention by third parties." (*People* v. *Lara* (1974) 12 Cal.3d 903, 908, fn. 4 [117 Cal.Rptr. 549, 528 P.2d 365].)

The crime of kidnap-robbery, as judicially construed, is limited to a highly constricted body of homogeneous conduct. Except for variations in the degree of harm to the victim, for which allowance has been made by the Legislature, the factual similarity (if not identity) among such offenses eliminates the individual offense itself as a meaningful basis for distinguishing among relative degrees of culpability among such offenders. Under the circumstances, the constitutionality of the prescribed penalty cannot be discerned by an ad hoc assessment of individual culpability based on a case-by-case examination of each offense.

In *In re Maston, supra,* 33 Cal.App.3d 559, we held that life imprisonment without parole for kidnap-robbery with bodily harm was not excessive when tested against the first of the three criteria of proportionality comprising the *Lynch* formula, i.e., the nature of the offense and/or the offender with particular regard to the degree of danger both present to society. The rationale for our holding rested upon a recognition that kidnaping is one of the most serious of all crimes and has latterly assumed particularly reprehensible forms (*People v. Daniels, supra,* 71 Cal.2d at p. 1135); that kidnaping for robbery is a deliberate if not a coldly planned offense by definition involving great risk of bodily harm: that substantial bodily harm is required to call forth the penalty of life without parole; and that the latter penalty represents a rational legislative effort to minimize a real social danger (*Maston, supra,* 33 Cal.App.3d at pp. 563-564).

■ The selection of the proper penalty for a criminal offense is a legislative function "involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; . . ." (*In re Lynch, supra,* 8 Cal.3d at p. 423.) "The Legislature is thus accorded the broadest discretion possible in enacting penal statutes and in specifying punishment for crime, but the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function." (*People v. Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880].) However, the resulting legislative judgment commands the respect of the courts unless its unconstitutionality " 'clearly, positively. and unmistakably appears.' " (*People v. Wingo, supra,* 14 Cal.3d at p. 174.)

■ Included among the relevant policy factors that the Legislature may consider in prescribing punishment for crime are the several objectives of punishment (see *People v. Anderson, supra,* 6 Cal.3d at pp. 651-652). So too, in determining whether a punishment is disproportion-

ate to the offense, we are enjoined to consider the penological purposes of the punishment imposed in the light of the particular offense (*In re Foss, supra,* 10 Cal.3d at p. 923). ■ The penalty challenged herein is calculated to advance a critically important social policy for the protection of the public at large, i.e., the deterrence of a particularly egregious type of life-endangering, criminal conduct. (*People* v. *Laursen, supra,* 8 Cal.3d at pp. 198, 201-202.)

Considering the penological and social objectives of the challenged punishment in the light of the evil to which that punishment is directed, we cannot say that the penalty of life imprisonment without parole is clearly, positively or unmistakably disproportionate to the offense of kidnaping for robbery with bodily harm.

In treating with the second *Lynch* criterion, we held in *Maston* that life without parole for kidnap-robbery with bodily harm was not constitutionally excessive by comparison to the penalties assessed by California for its most serious offenses. "Despite anomalies in the structure of surrounding laws, the penalty is not disproportionate by the standards of internal California comparisons" because it "serves a rationally conceived penal purpose." (*In re Maston, supra,* 33 Cal.App.3d at p. 565.)

The third *Lynch* criterion involves interstate comparisons of the challenged California penalty with that imposed in other jurisdictions for similar conduct. When *Maston* was decided in 1973, seven states in addition to California provided for life without parole as punishment for aggravated kidnaping. At present, six states (Arizona, Iowa, Louisiana, Nevada, Tennessee, West Virginia) in addition to California provide a penalty of life imprisonment without parole for aggravated kidnaping. Yet we are not compelled constitutionally to conform "our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide." (*People* v. *Wingo, supra,* 14 Cal.3d at p. 179.) Since the challenged penalty has a judicially acknowledged rational purpose (*People* v. *Laursen, supra,* 8 Cal.3d at pp. 198, 201-202; *In re Maston, supra,* 33 Cal.App.3d at p. 563), it would constitute an act of judicial wilfulness to invalidate the penalty on the basis that the superior wisdom resides with the legislative bodies of foreign sovereignties rather than the elected representatives of the people of California.

Disposing of defendant's equal protection argument, we again rely on *Maston.* There we held that "[defendant's] charge of a denial of equal protection disappears with the recognition of a rational basis for the

augmented penalty. [Citation.]" (*In re Maston, supra,* 33 Cal.App.3d at p. 566; see *People* v. *Morgan* (1973) 36 Cal.App.3d 444, 449 [111 Cal.Rptr. 548].)

## II.

■ Defendant claims that the punishment of life imprisonment without parole is unconstitutional because it serves no penal purpose more effectively than would be served by that punishment as mitigated by the application thereto of section 1202b. Defendant cites no authority, and we are aware of none, that supports the proposition that 'the selection by the trial judge of the more severe of two alternatively available sentences in some way implicates rights assured him under the Constitution. Accordingly, we reject defendant's claim of constitutional deprivation in the choice of sentence imposed by the trial court. In essence, defendant's quarrel with the trial court's choice of penalty is an attack upon that court's exercise of discretion.[4]

The invocation of section 1202b in the case of an otherwise qualified defendant is within the discretion of the sentencing court. (*People* v. *Buggs* (1969) 272 Cal.App.2d 285, 288 [77 Cal.Rptr. 450].) Defendant offers no reason why the trial court should have exercised its discretion to mitigate the sentences imposed other than that he was, at the time of the offense and of his apprehension, 17 years of age. Stripped of its asserted constitutional basis, defendant's contention is thus reduced to a categorical insistence that the amelioration of a sentence of life without parole is required in any case where the defendant so qualifies by reason of his age. Such a construction is, of course, directly contrary to the legislative intent implicit within section 1202b, i.e., that its application is confided to the sound discretion of the trial court.

Here, the trial judge declined to exercise his discretion "based upon every appearance that this man has made before me, upon the entire file regarding his appearances." The trial court also properly considered the potential effect of section 1202b upon the defendant's circumstances, i.e.,

---

[4]Both parties assume the theoretical applicability of section 1202b to the instant proceeding. Neither party discusses the effect of its application to a sentence of life imprisonment without possibility of parole. Construed literally, section 1202b would transmute the sentence here imposed from one for life without possibility of parole to an indeterminate sentence of from six months to life without possibility of parole, thus permitting defendant's discharge (but not parole) at any time after six months have been served. In upholding the trial court's exercise of discretion, we assume, without deciding, the applicability of section 1202b to the penalty of life imprisonment without parole.

that it would permit his release by the Adult Authority within a minimum of six months. The facts of the offense itself as disclosed by the record portray a picture of violence and tragedy that is typical of such cases. The defendant, then age 17, and a male companion were hitchhiking and were given a ride by the victim. Thereafter defendant and his companion, who was armed with a gun, forceably took control of the car from the victim and drove her five to seven miles into a remote, rural area. There she was beaten, kicked and robbed of approximately $5,000 and her automobile. Defendant obtained possession of the gun from his companion and shot the victim in the head. The victim, apparently dead, was left to her fate at the scene by defendant and his companion who departed with her money and car.

The trial court found that there were no "extenuating circumstances for the application of Section 1202b of the Penal Code, . . ." There was no abuse of discretion. (See *People* v. *Giminez* (1975) 14 Cal.3d 68, 71-72 [120 Cal.Rptr. 577, 534 P.2d 65].)

Other contentions of error at the sentencing are patently without merit and do not require discussion.

The judgment is modified by striking therefrom the section 12022 and section 12022.5 findings from each of the separate sentences imposed and by adding at the end thereof: "Defendant was armed with a deadly weapon at the time of the commission of the offenses of kidnap for robbery with bodily harm and assault with intent to commit robbery within the meaning of Penal Code sections 969c, 12022 and 3024. Defendant used a firearm in the commission of the offenses of kidnap for robbery with bodily harm and robbery within the meaning of Penal Code sections 969d and 12022.5." (See fn. 2, *ante*, p. 27.)

The judgment is further modified by staying service of the sentences imposed for robbery and assault to rob during service of the sentence for kidnap-robbery, said stay to become final upon completion of the sentence of imprisonment imposed under the judgment of conviction for kidnap-robbery and satisfaction of the state's presently defined remedies against defendant thereunder. The trial court is directed to prepare a certified amended abstract of judgment incorporating the foregoing

modifications and to furnish the same to the Director of Corrections forthwith.

As modified, the judgment is affirmed.

Friedman, J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1976. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.