Filed 12/17/20  P. v. Ayala CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOEL JOE AYALA,<br><br>    Defendant and Appellant. | B302166<br><br>(Los Angeles County<br>Super. Ct. No. A788294-01) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Joel Ayala (defendant) sought a youth offender parole hearing pursuant to Penal Code section 3051[1] for which he is statutorily ineligible, and the trial court denied his request. On appeal, he asserts for the first time that section 3051 violates equal protection in two different ways. We conclude it does not, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In July 1986, defendant and a second man attempted to carjack a black truck and, when the truck's owner did not comply, the defendant shot the owner once and the second man shot him twice. The owner died. Defendant was 18 years old at the time.

### II.    Procedural Background

#### A.    *Prosecution, conviction and sentence*

The People charged defendant with murder (§ 187, subd. (a)), and further alleged the special circumstance that the murder was committed while defendant was engaged in a robbery (§ 190.2, subd. (a)(17)) and that defendant had personally used a firearm (§ 12022.5).

The jury found defendant guilty of first degree murder, and found both of the further allegations to be true.

In light of the special circumstance finding, the trial court sentenced defendant to prison for life without the possibility of parole.

#### B.    *Current petitions*

In April 2019, defendant filed a petition for a writ of habeas corpus seeking a youth offender parole hearing pursuant to

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

section 3051 on the ground that he had been incarcerated for at least 25 years. On August 2, 2019, defendant filed a petition under section 1203.01 seeking the same relief.

The trial court denied defendant's first petition on the ground that he was ineligible for a youth offender parole hearing under the plain terms of section 3051, and denied the second as successive to the first.

### C. *Appeal*

Defendant timely filed this appeal.

### DISCUSSION

As a general matter, section 3051 grants prisoners who were "25 years of age or younger" at the time they committed "the controlling offense" the right to a "youth offender parole hearing" where a court will "review[]" their "suitability" for "parole." (§ 3051, subd. (a).) But section 3051 does not extend this right to *all* prisoners who were 25 or younger at the time of their crimes: As pertinent here, section 3051 does not apply to persons sentenced to life without the possibility of parole (LWOP) if they were "18 years of age" or older at the time they committed the controlling offense. (*Id.*, subd. (h); see generally *In re Jenson* (2018) 24 Cal.App.5th 266, 277-278.)[2]

Defendant is not eligible for relief under section 3051, as he was 18 years old at the time of the murder and was sentenced to LWOP. Accordingly, he argues on appeal that he is entitled to a youth offender parole hearing because section 3051 denies his right to equal protection of the laws in two ways: (1) it grants a

---

[2]     Section 3051 also does not apply to persons sentenced under our Three Strikes Law for recidivists (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)), or our One Strike Law for violent sex crimes (§ 667.61). (§ 3051, subd. (h).)

3

youth offender parole hearing to *juveniles* (that is, persons under the age of 18) sentenced to LWOP, but denies such a hearing to "youthful offenders" (that is, persons 18 to 25 years old) sentenced to LWOP, and (2) it grants a youth offender parole hearing to persons convicted of first degree murder but not sentenced to LWOP, but denies such a hearing to persons convicted of murder but sentenced to LWOP.  Defendant did not raise either equal protection challenge with the trial court, so has forfeited each challenge.  (E.g., *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14.)  We will nevertheless exercise our discretion to consider his equal protection challenges.  We independently review constitutional challenges to a statute. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.)

The right to equal protection of the law is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification."  (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*); *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568.)  Where our Legislature fixes different punishments for different crimes, those differences do not violate equal protection unless the challenges show "there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*); *People v. Wilkinson* (2004) 33 Cal.4th 821, 838.)  "This so-called 'rational basis' scrutiny is exceedingly deferential:  A law will be upheld as long as a court can 'speculat[e]' any rational reason for the resulting differential treatment, regardless of whether the 'speculation has "a foundation in the record,"' regardless of whether it can be 'empirically substantiated,' and regardless of whether the Legislature ever 'articulated' that reason when enacting the law."

4

(*People v. Love* (2020) 55 Cal.App.5th 273, 287, quoting *Turnage,* at pp. 74-75 and *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

We examine each of defendant's equal protection arguments separately.

## I. Differential Treatment of Juveniles and Youthful Offenders Sentenced to LWOP

Defendant argues that section 3051 violates equal protection because it treats youthful offenders (that is, those 18 to 25 years old) who commit murder and are sentenced to LWOP differently than juveniles (that is, those under 18 years old) who commit murder and are sentenced to LWOP; the former are not entitled to a youth offender parole hearing, while the latter are. Defendant's equal protection challenge to this distinction lacks merit because, even if we assume that youthful offenders and juveniles who commit murder and are sentenced to LWOP are similarly situated, both the United States Supreme Court and our Supreme Court have repeatedly found the line drawn between juveniles and non-juveniles when it comes to criminal sentencing to be a rational one. (*Miller v. Alabama* (2012) 567 U.S. 460, 471 ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*) ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood"]; *People v. Gamache* (2010) 48 Cal.4th 347, 405 ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection"].) Defendant nevertheless urges that the line section 3051 draws is not rational because *all* persons under the age of 25 should be entitled to show that they have reformed themselves while in

5

prison, but the U.S. Supreme Court has already considered and rejected such arguments when it has upheld the longstanding practice of distinguishing between juveniles and adults despite the fact that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." (*Roper*, at p. 574.) Indeed, the court in *In re Jones* (2019) 42 Cal.App.5th 477 rejected precisely the argument defendant now advances under a similar statute: "The Legislature could reasonably decide that for those convicted of LWOP crimes, the line should be drawn at age 18, rather than at some later date when the brain is fully developed." (*Id.* at p. 483.) We add another brick to this solid wall of precedent.

## II. Differential Treatment of Youthful Offenders Convicted of First Degree Murder (But Not Sentenced To LWOP) And Youthful Offenders Convicted of First Degree Murder (But Sentenced to LWOP)

Defendant next argues that section 3051 violates equal protection because it treats youthful offenders convicted of first degree murder differently than youthful offenders who are sentenced to LWOP; the former are entitled to a youth offender parole hearing, while the latter are not. Defendant's equal protection argument to this distinction also lacks merit. Because a person is eligible for LWOP only if he has committed first degree murder (§ 190.2), both groups involve youthful offenders convicted of first degree murder. But those sentenced to LWOP have *also* been found, beyond a reasonable doubt, to have committed that first degree murder under one of 22 different special circumstances that reflect that the particular first degree murder was in some manner aggravated or reflected a greater risk of harm to persons other than the immediate murder victim. (§ 190.2, subds. (a)(1)-(a)(22); *People v. Horning* (2004) 34 Cal.4th

6

871, 907 (*Horning*).) As a result, youthful offenders who have been sentenced to LWOP have committed an aggravated form of first degree murder that distinguishes them from youthful offenders who have committed first degree murder but done so in the absence of any aggravating factors. Consequently, the two groups are not similarly situated. (*In re Williams* (2020) 57 Cal.App.5th 427, 435-436 (*Williams*) [so holding]; see also *People v. Jacobs* (1984) 157 Cal.App.3d 797, 803 ["'Persons convicted of different crimes are not similarly situated for equal protection purposes'"], italics omitted; see also *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1503 ["persons convicted of different offenses can be punished differently"].) And even if we accept for the sake of argument defendant's contention that *all* murderers are similarly situated vis-à-vis section 3051's desire to allow *all* youthful offenders the opportunity to show that they have reformed, the difference in the underlying crimes provides a rational reason for distinguishing between the two groups of first degree murderers. (*Williams*, at pp. 435-436; accord, *People v. Contreras* (2018) 4 Cal.5th 349, 382 [noting that "special circumstance murder" is sentenced most "harshly"].)

Defendant argues that *People v. Edwards* (2019) 34 Cal.App.5th 183 (*Edwards*) dictates a different result. It does not. *Edwards* held that our Legislature had no rational reason to deny a youth offender parole hearing to a juvenile convicted of sexually violent crimes under our One Strike Law but to grant such a hearing to a juvenile convicted of first degree murder because "no crime deserves categorically harsher punishment than . . . first degree murder." (*Id.* at pp. 197-199.) As a threshold matter, at least one subsequent decision has rejected *Edwards*'s analysis, and our Supreme Court has granted review

7

to resolve the split.  (*People v. Williams* (2020) 47 Cal.App.5th 475, 492, review granted July 22, 2020, S262191.)  But even if we ignore *Edwards*'s uncertain status, the two groups of youthful offenders at issue in this case *both* committed first degree murder, rendering *Edwards*'s "you have it backwards" rationale inapt.  Defendant urges that section 3051 has it backwards in this case because it denies a youth offender parole hearing to a youthful offender who commits first degree murder on a felony-murder theory (and who is sentenced to LWOP) but grants such a hearing to a youthful offender who commits first degree murder in a premeditated and deliberate manner (and who is not sentenced to LWOP).  This is backwards, defendant explains, because premeditated murders are worse than felony murders.  Defendant's argument ignores that a first degree murder conviction based on a felony murder qualifies as a special circumstance murder only if the defendant "killed 'to advance an independent felonious purpose,'" and thus killed while intending to commit a wholly separate felony apart from the homicide, which elevates his overall criminal culpability in a manner that was not present even with a premediated killing.  (*Horning*, *supra*, 34 Cal.4th at p. 907.)  What is more, the presence of "backwards" sentences in individual cases does not invalidate the entire distinction (e.g., *In re Maston* (1973) 33 Cal.App.3d 559, 564-566 ["asymmetry in the scale of penalties" in individual instances does not mean the Legislature acted irrationally for equal protection purposes]), and is of no weight here where defendant was the actual killer because the evidence showed that (1) defendant was the one who shot the victim "in the side" and (2) it was the "abdominal" gunshot "wound" that was fatal.

8

**DISPOSITION**

The order denying post-conviction relief is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

9