[Crim. No. 16767. Second Dist.. Div. Two. Mar. 11, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE DACY, Defendant and Appellant.

## COUNSEL

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—By information Robert Lee Dacy was charged with kidnaping for ransom Mrs. Joanne Stalford (count I) and her four-year-old son Stanley (count II). (Pen. Code, § 209.) The information also charged that Stanley had been subjected to bodily harm, that defendant had been armed. with a concealable deadly weapon, and that defendant had four prior felony convictions (three were admitted and one was subsequently dismissed).

The kidnaping began with the kidnaper's entry into the Stalfords' house under false pretenses, his movement of Mrs. Stalford at gun point into a walk-in closet, where she was left bound and gagged with tape, the disappearance of the kidnaper with young Stanley, and his demand for $250,000 ransom; and it ended with an abortive attempt to collect the ransom, a high-speed automobile chase by FBI agents, exchanges of gunfire, the ramming of the kidnaper's car, and the capture of the kidnaper and the rescue of young Stanley. Defendant was identified as the kidnaper by Mrs. Stalford, by the Stalford gardeners, and by the FBI agents who captured him. Defendant also, fully confessed the kidnaping.

The jury found defendant guilty on both counts, and on count II he was

sentenced to life imprisonment without possibility of parole. Execution of sentence on count 1 was stayed.

■ On appeal, defendant contends his confession should have been excluded from evidence because at the time he gave it he had been incapable of knowingly and intelligently waiving his right to silence and to counsel. Immediately after his capture defendant was taken to a hospital with a broken leg and facial cuts. En route to the hospital and twice after his arrival he was advised of his rights, and his replies indicated he fully understood them. He was questioned by FBI agents from 7:10 a.m. to 7:30 a.m., and questioning was then suspended so he could be treated by Dr. Robert Nelson, a hospital physician. Dr. Nelson gave defendant a Darvon tablet and a 10-milligram injection of morphine. (Darvon is an analgesic, non-narcotic pain reliever which may make the patient a little drowsy; 10 milligrams of morphine is half a full therapeutic dose.) Questioning resumed at 8 a.m. and continued until 9:04 a.m. All witnesses, including Dr. Nelson, testified that after defendant had been treated he seemed calm, coherent, and lucid, and exhibited neither sluggishness nor euphoria. Defendant himself testified he was under the effects of sedation, but in view of the evidence that his dosage was mild and that he did not appear sedated, his testimony is insufficient to establish as a matter of law that he was incapable of intelligently waiving his rights. ■ The mere fact of ministration of drugs does not establish an impairment of capacity so as to render a confession inadmissible. (*People* v. *Massie,* 66 Cal.2d 899, 906 [59 Cal.Rptr. 733, 428 P.2d 869].)

Defendant concedes that the evidence of kidnaping was overwhelming. He contends, however, that the proof that Stanley suffered bodily harm during his kidnaping was legally insufficient, or if sufficient, so meager that three occurrences to which he refers could easily have prejudiced him on that issue.

■ To assess defendant's claims of prejudice we must first consider the sufficiency and weight of the evidence that Stanley suffered bodily harm as a consequence of the kidnaping. During his abduction Stanley received the following injuries—cuts on his arm and toe, superficial abrasions, facial bruises, and a 4-inch knee laceration which required 20 surface stitches and a few deeper ones to close. These injuries were serious enough to constitute bodily harm within the meaning of section 209 of the Penal Code. Unlike the trivial injuries in *People* v. *Gilbert,* 63 Cal.2d 690, 711 [47 Cal.Rptr. 909, 408 P.2d 365], and *People* v. *Jackson,* 44 Cal.2d 511 [282 P.2d 898], the injuries to Stanley involved breaks in the skin which required medical treatment. A laceration requiring multiple stitches must normally be deemed bodily harm.

■ Defendant contends, however, that regardless of whether Stanley

suffered bodily harm, the harm was not shown to have been the proximate result of the kidnaping. Stanley most probably was injured as a result of the collision which occurred when a car driven by FBI agents rammed defendant's car after a chase which involved speeds up to 100 miles an hour and an exchange of gunfire on the city streets. The situation is comparable to that in *People* v. *Reed,* 270 Cal.App.2d 37, 48-50 [75 Cal.Rptr. 430], where the kidnaper pointed a gun at police officers who thereupon fired at the kidnaper and fatally wounded his victim. There, as here, injury to the victim was a reasonably foreseeable consequence of defendant's intentional acts. Given the extent and nature of Stanley's injuries and the manner by which they were brought about, including defendant's high-speed flight and his use of a firearm, we think the proof that Stanley suffered bodily harm as a result of the kidnaping cannot be characterized as meager.

With this in mind we take up defendant's contention that he was prejudiced by certain occurrences during his trial. Defendant first claims prejudice because of a newspaper article which appeared a few days before the date of his trial. After a jury had been selected, defendant brought the article to the attention of the trial judge and moved for a mistrial. Prior to the date of the article the judge had admonished prospective jurors to avoid reading or listening to any account of the kidnaping, and "[i]t must be assumed that ordinarily admonitions to the jury are heeded." (*People* v. *Gould,* 54 Cal.2d 621, 627 [7 Cal.Rptr. 273, 354 P.2d 865].) After the making of the motion the judge asked the jurors if any of them had read the article, and none of them had done so. Defendant, therefore, failed to sustain his burden of showing prejudicial influence on the jury brought about by the newspaper article. (*People* v. *Torres,* 185 Cal.App.2d 168, 172 [8 Cal.Rptr. 135].)

Defendant next contends the trial court abused its discretion in allowing into evidence six colored photographs of Stanley's injuries, which photographs exceeded in gruesomeness their probative value as evidence. But, since the nature and extent of Stanley's injuries was a contested issue in the case, the photographs were material to the charge and were properly received in evidence.

Defendant also contends he was prejudiced because some of the jurors had heard about his prior arrest record. After the jury returned its verdicts on defendant's guilt and before the penalty stage of the trial, the court and counsel learned by a note from one of the jurors that at some time during a break in the jury's deliberations one juror had remarked that defendant had an arrest record, a remark overheard by several other jurors. An examination of the jurors by court and counsel revealed that two of the jurors had heard that defendant had a prior arrest record; that they had commented about it in a passing way during a coffee break, probably before

the verdicts were agreed upon but possibly afterwards; that other jurors heard the remarks and asked the jurors who made them not to discuss the matter; that the jurors did not take into account what they heard about defendant's arrest record in reaching their verdicts on the charges; nor would they do so in reaching their verdicts on the penalty. Defendant's motion for a mistrial was denied.

It was not an abuse of the trial court's discretion to deny defendant's motion for a mistrial. (*People* v. *Wilson*, 235 Cal.App.2d 266, 280-281 [45 Cal.Rptr. 267].) The trial court admonished the jury before it retired that it was not to consider anything outside the evidence, and there is a presumption that the jury heeded the admonition. (*People* v. *Gould, supra,* at p. 627.) At bench, reliance on the presumption is unnecessary because the jurors stated that they had heeded the admonition and they would continue to do so.

■ Even were we to assume that this incident could be classified as procedural error, we would regard it as non-prejudicial error which did not result in a miscarriage of justice. (Cal.Const., art. VI, § 13.) The evidence was overwhelming that defendant committed the kidnaping and that Stanley suffered cuts and bruises after a high-speed automobile chase during which defendant fired shots at the FBI agents. The factual issue before the jury was whether such evidence was to be believed, and on this record it is inconceivable that the jury could have disbelieved it, whether or not it knew about defendants' prior arrest record. Once the jury determined that this evidence was credible, the remaining questions before it were questions of law: Did defendant's acts amount to kidnaping? Did Stanley's injuries amount to bodily harm within the meaning of Penal Code section 209? Were those injuries a result of the kidnaping? These questions have little or no connection with defendant's arrest record, and their resolution did not depend in any way on defendant's prior conduct.

■ Subsequent to the trial of this case the Supreme Court in *People* v. *Daniels,* 71 Cal.2d 1119, 1130, 1139 [80 Cal.Rptr. 897, 459 P.2d 225], ruled that a charge of kidnaping may not be sustained by proof of incidental movement of the victim by the defendant in connection with the commission of another crime. Accordingly, we must review the validity of the conviction of defendant on count I (the kidnaping of Mrs. Joanne Stalford) in the light of this new interpretation of the kidnaping statute. (*People* v. *Rollins,* 65 Cal.2d 681, 685 [56 Cal.Rptr. 293, 423 P.2d 221].) Under the former interpretation of the kidnaping law any slight forcible movement of the victim could qualify as sufficient asportation to support the charge of kidnaping. This is no longer true, and we are now required to consider the objective

which the defendant had in mind in effecting an incidental movement of his victim. ▇ In the present case it is reasonably clear that the primary objective of the defendant was to kidnap and hold for ransom the four-year-old child of Mrs. Stalford, that the coerced movement of Mrs. Stalford from one room to another within her own house amounted to no more than an incidental movement of her person designed to further the defendant's primary objective of kidnaping young Stanley and holding him for ransom. Mrs. Stalford was not moved to the walk-in closet for the purpose of kidnaping her for ransom, but only as a means to further the kidnaping of young Stanley; hence this movement did not qualify as a forcible removal of her person and did not furnish the element of asportation necessary to support a kidnaping charge. While defendant perpetrated a whole cluster of wrongs against Mrs. Stalford, including threats, extortion, assault, battery, false imprisonment, forcible restraint, and bodily injury, his trespasses against her did not include the elements necessary to sustain the charge of kidnaping for ransom. For this reason the judgment on the first count must be reversed.

The judgment is reversed on the first count and affirmed on the second count.

Herndon, Acting P. J., and Wright, J., concurred.