[No. B029174. Second Dist., Div. Two. June 30, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY PAUL BROGNA, Defendant and Appellant.

---

COUNSEL

Ardy V. Barton, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert F. Katz and Susanne C. Wylie, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

COMPTON, J.—An information charged defendant Rodney Paul Brogna with second degree murder (Pen. Code, § 187) arising from a vehicular homicide in count I, driving under the influence of alcohol so as to cause bodily injury to another in count II (Veh. Code, § 23153, subd. (a)), and driving with a blood-alcohol level of .10 percent or above causing injury in count III (Veh. Code, § 23153, subd. (b)). The information further alleged that defendant previously had suffered a conviction for driving under the influence within five years of the commission of the instant offenses, and that he had caused bodily injury to more than one victim within the meaning of Vehicle Code section 23182.

A jury acquitted defendant on the murder charge, but found him guilty of the lesser included offense of vehicular manslaughter involving alcohol (former Pen. Code, § 192, subds. (c)(3) & (c)(4), now § 191.5), and of driving under the influence as charged in counts II and III. Although the jury specifically found that the homicide was committed with gross negligence, it concluded that defendant had not caused injury to more than one victim. Defendant was sentenced to state prison for a total term of eight years,[1] and this appeal follows. We affirm.

---

[1] Although defendant waived a jury trial on the validity of the prior conviction, the court never considered the issue, finding that the sentence imposed would be the same whether or not the allegation was found to be true.

Shortly before midnight on February 23, 1986, 17-year-old Alexandra Vincent was proceeding eastbound on the Ventura Freeway when her vehicle, a late model Fiat, stalled just west of the Van Nuys Boulevard exit. After moving the car to the right shoulder, Vincent walked to a phone booth on Sepulveda Boulevard and called her mother, Sandra Loomis, for assistance. Following a brief conversation, Loomis contacted a towing service and arranged for a truck to meet her and her daughter on the shoulder of the freeway. She then drove to where Vincent was waiting and the two women went in search of the disabled vehicle. Within minutes, they spotted the Fiat on the side of the roadway and Loomis pulled her Datsun Z directly behind it.

The tow truck arrived shortly thereafter and parked in front of the Fiat. Seeing the driver turn on the truck's yellow flashing lights, Vincent walked to her vehicle and opened the hood. Loomis, who already had activated the Datsun's emergency lights, joined her daughter as she waited for the serviceman to exit the truck. Remembering that her automobile club card was in her mother's car, Vincent went to retrieve it. At approximately the same time, defendant's vehicle, a Chevrolet Blazer truck, began negotiating a series of lane changes as it proceeded eastbound on the Ventura Freeway. Traveling at between 55 and 60 miles per hour, the truck moved from the lane nearest the center divider to the number two lane without signaling and then suddenly veered on to the shoulder where it collided with the Datsun. As a result of the impact, Vincent was thrown beyond the guard rail and landed face down in a patch of ivy at the side of the roadway.

An off-duty deputy sheriff, Steven Katz, who stopped to render assistance only minutes after the accident attempted to revive Vincent but to no avail. Unable to locate a pulse, the deputy turned his attention to defendant who remained slumped over in the truck. After prying the door open, Katz helped defendant exit the vehicle and directed him to sit some distance from the accident scene. As they walked away from the truck, Katz noticed that although defendant had sustained only minor injuries and was not in shock, he had considerable difficulty retaining his balance and that his eyes appeared red and watery. At trial, the deputy testified that based on his training and experience such symptoms, in addition to defendant's slow and deliberate movements, were consistent with being under the influence of alcohol.

Highway Patrol officers who arrived at the scene sometime after the accident also observed defendant's glazed eyes, unstable coordination, and were able to detect a strong odor of alcohol on his breath. Failing to adequately perform a series of field sobriety tests, defendant was placed under arrest and transported to a nearby hospital. Test results of a blood

sample withdrawn from defendant two and one-half hours after the collision revealed a blood-alcohol level of .17 percent.[2] A forensic alcohol analyst testified at trial that this figure was equivalent to a blood-alcohol level of .20 percent at the time of the accident.

Prior to trial, the district attorney apparently advised defense counsel that, in accordance with the provisions of Evidence Code section 1101, subdivision (b),[3] the prosecution would seek to introduce defendant's two prior convictions for driving under the influence for the purpose of proving the element of implied malice in the charge of second degree murder. Defendant thereafter requested that the court exclude the use of the convictions on the grounds that they were not probative of his mental state at the time of the accident and, in any event, were highly prejudicial. After hearing extensive argument, the court ruled that the priors were admissible to prove defendant's state of mind, to wit, his knowledge of the life-threatening dangers of drinking and driving. The court further found that the prosecution was entitled to introduce evidence that as a condition of probation imposed in connection with the prior offenses defendant had attended meetings of Alcoholics Anonymous and participated in various drinking driver education programs.

Once trial commenced the parties stipulated that defendant had been convicted of driving under the influence in August 1979 and October 1983, and that as a condition of his summary probation in both cases he completed a "first offense driving-while-intoxicated school" and a one-year alcohol abuse program. The prosecution also introduced evidence that defendant had attended at least 26 meetings of Alcoholics Anonymous and took part in counseling sessions which emphasized the dangers of drinking and driving. These sessions included lectures, films, and individual and group therapy.

Following the admission of the stipulation into evidence, and again at the conclusion of trial, the jury was instructed that it could consider defendant's prior convictions, and the evidence related thereto, for the sole purpose of determining the existence of implied malice.[4]

---

[2] The parties stipulated at trial that a separate analysis of the blood sample by defendant's experts indicated a blood-alcohol level of .13 percent.

Either blood-alcohol level was sufficient to establish that defendant was under the influence of alcohol.

[3] Evidence Code section 1101, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

[4] At the conclusion of trial, the jury was instructed as follows: "Evidence has been introduced establishing that the Defendant has been previously convicted of driving under the influence, and, as a result, was placed on probation and attended drinking driver programs.

Although defendant elected not to testify, defense counsel essentially argued to the jury that the evidence offered by the prosecution, including the prior convictions, failed to establish either implied malice or gross negligence at the time of the accident. Attempting to cast doubt on the accuracy of the blood-alcohol analysis, counsel further asserted that the testing procedures utilized by the People's experts contributed to a falsely high reading.

As previously noted, defendant was acquitted of second degree murder, but found guilty of the lesser included offense of vehicular manslaughter committed while driving under the influence and with gross negligence. ■ On this appeal, he neither challenges the sufficiency of the evidence nor denies his guilt but solely contends that the trial court prejudicially erred when it admitted evidence of his two prior convictions and participation in various alcohol abuse programs.

Defendant's argument is premised on the assertion that his previous convictions for driving under the influence were not probative on the issue of implied malice and that, in any event, the evidence was so prejudicial that it contributed to his conviction for vehicular manslaughter with gross negligence. We disagree.

■ Although evidence of other criminal acts or misconduct of a defendant is inadmissible to prove the accused had the propensity or disposition to commit the crime charged (Evid. Code, § 1101, subd. (a); *People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947]), it is ordinarily admissible where it tends to show motive, knowledge, identity, intent, opportunity, preparation, plan, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *People* v. *Tassell* (1984) 36 Cal.3d 77, 83-89 [201 Cal.Rptr. 567, 679 P.2d 1].) Evidence admissible under subdivision (b) of Evidence Code section 1101 remains subject to exclusion under Evidence Code section 352. (*People* v. *Dellinger* (1984) 163 Cal.App.3d 284, 297 [209 Cal.Rptr. 503].) "The proffered evidence must logically, naturally and by reasonable inference tend to prove the issue in dispute. It must be offered upon an issue that will ultimately prove to be material to the People's case and it must not merely be cumulative with respect to other evidence which

---

"Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes.

"Such evidence was received and may be considered by you only on the issue of the existence of implied malice.

"You are the sole judges of whether or not such evidence reasonably tends to prove the existence of implied malice, and, if so, the weight to be given such evidence.

"You are not permitted to consider such evidence for any other purpose."

The jury was similarly instructed immediately following the stipulation of the parties.

the People may use to prove the same issue. [Citations.]" (*People* v. *Perez* (1974) 42 Cal.App.3d 760, 764 [117 Cal.Rptr. 195].)

 Here, of course, the trial court reasoned that both the prior convictions and defendant's participation in various drinking driver programs were relevant to prove the knowledge element of implied malice, and that the probative value of such evidence outweighed the danger of undue prejudice. In reaching this conclusion, the court relied in substantial part on the recent case of *People* v. *McCarnes* (1986) 179 Cal.App.3d 525 [224 Cal.Rptr. 846], wherein the Court of Appeal for the Fourth District, Division Two, held that a defendant's prior convictions for driving under the influence were admissible to establish implied malice in a prosecution for second degree murder arising out of a vehicular homicide. In so holding, the court pointedly observed: "[T]he reason that driving under the influence is unlawful is *because* it is dangerous, and to ignore that basic proposition, particularly in the context of an offense for which the punishment for repeat offenders is more severe (Veh. Code, §§ 23165, 23170, 23175), is to make a mockery of the legal system as well as the deaths of thousands each year who are innocent victims of drunken drivers. [¶] Moreover, included in the evidence of two of defendant's [four] convictions, as shown to the jury, was the sentence that he enroll in and complete a drinking driver's education program. Even if we assume defendant did not realize after his *convictions* that it was dangerous to drink alcohol and drive, surely realization would have eventually arrived from his *repeated* exposure to the driver's educational program. To argue otherwise is little short of outrageous." (*Id.* at p. 532; italics in original.)

Although defendant acknowledges that *McCarnes* resolved the issue presented in this case adverse to his position, he argues that it wrongly interpreted the Supreme Court's decision in *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279], and thus should not be applied here. We cannot agree.

 In *Watson,* the court held that a defendant charged with killing another while driving in an intoxicated condition may be convicted of second degree murder. The malice to establish the crime may be implied if "a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." (*Id.* at p. 296.) Absent such malice, the homicide is vehicular manslaughter if committed with gross negligence, which is "the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." (*Ibid.*) In attempting to distinguish between the term "gross negligence" and implied malice, the court constructed an "objective-subjective" test as follows: "A finding of gross negligence is made by applying an *objective* test:

if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. [Citation.] However, a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (*Id.* at pp. 296-297; italics in original.)

"The distinction between 'conscious disregard for life' and 'conscious indifference to the consequences' is subtle but nevertheless logical. Phrased in everyday language, the state of mind of a person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.' The state of mind of the person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.' It makes sense to hold the former more culpable than the latter, since only the former is actually aware of the risk created." (*People* v. *Olivas* (1985) 172 Cal.App.3d 984, 987-988 [218 Cal.Rptr. 567].)

Consistent with *Watson,* the jury in our case was instructed in pertinent part as follows: ". . . Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life or when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life. . . ." (CALJIC No. 8.11 (1983 Rev.).)

Defendant maintains that because the "intentional act" referred to in the definition of implied malice relates to the unlawful act which immediately preceded the accident and gave rise to the victim's death, to wit, an illegal lane change, his prior convictions were irrelevant to any issue which the jury was required to decide. Those convictions, however, are probative on the issue of whether the defendant possessed a subjective awareness of the life threatening risks associated with drinking and driving, an element of implied malice as defined in *Watson.* ■ Contrary to the argument advanced here, the criminal act underlying vehicular murder is not the traffic violation which may precede an accident, but driving under the influence with conscious disregard for life. (*People* v. *Olivas, supra,* 172 Cal.App.3d at pp. 988-989.) The court in *Watson* recognized that a legally intoxicated driver is less able to exercise the judgment and physical control that safe driving requires. "'One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, *reasonably may be held to exhibit a conscious disregard of the safety of others.*'" (*People* v. *Watson,*

*supra,* 30 Cal.3d 290, 300-301; italics added.) The act of drinking and driving thus creates the risk that an intoxicated driver will perform or omit to perform an act which proximately causes another's death.[5]

One who drives a vehicle while under the influence after having been convicted of that offense knows better than most that his conduct is not only illegal, but entails a substantial risk of harm to himself and others. As recognized by the court in *McCarnes,* driving under the influence constitutes a criminal offense precisely because it involves an act which is inherently dangerous. (*People* v. *McCarnes, supra,* 179 Cal.App.3d 525, 532.) That simple fact has been made well known to all segments of our society through virtually every form of mass media. Considering today's heightened level of public awareness, we cannot believe that any person of average intelligence who has suffered a "drunk driving" conviction would be oblivious to the risks caused by driving while intoxicated.

Although it has been argued that one convicted of the offense perceives little from the experience except the inconvenience of arrest and court appearance, this position ignores the fact that the conviction itself does not occur in a vacuum. The convicted offender is subject to a wide array of criminal and civil disabilities, all of which serve to underscore the dangers of driving under the influence. In particular, the drinking driver and alcohol abuse programs mandated by statute for all first and second offenders who receive probationary sentences (see Veh. Code, §§ 23161, subd. (b) and 23166, subd. (b)(4)) provide detailed information concerning the mental and physical impairment caused by alcohol and the concomitant diminution of driving abilities (see e.g., Health & Saf. Code, § 11837.4, subd. (a)(3)).

■ As we see it, evidence that a defendant has suffered a prior conviction and participated, as a condition of probation, in some form of alcohol education program which emphasized the dangers of driving while intoxicated is relevant to prove the accused's awareness of the life threatening risks caused by his conduct. Regardless of its probative value, evidence relating to other crimes always creates a risk of serious prejudice. If the prejudicial effect outweighs the probative value, the trial court should exclude the evidence. In the broad sense, however, all relevant evidence which points to a defendant's guilt is prejudicial to his defense. The stronger the evidence, the more it is "prejudicial." ■ "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to

---

[5] *Watson* and its progeny make clear that drinking and driving is but one factor which the jury may consider in determining the existence of implied malice. It is to be viewed in combination with other actions and/or omissions which may necessarily show that the defendant possessed a culpable state of mind.

evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " (*People* v. *Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].)

■■■ While the evidence of defendant's prior convictions was undoubtedly "damaging" to his case, it possessed substantial relevance on the issues of knowledge and conscious disregard raised by the charge of second degree murder. The trial court carefully balanced the probative value of the evidence against the potential for prejudice resulting from its improper use by the jury. The evidence, as admitted, included no inflammatory or highly prejudicial details; indeed, it did little more than show that defendant had suffered two previous convictions and was subject to various probationary conditions. The testimony relating to his participation in a year-long drinking driver's program merely detailed the subject matter of the course and referred to defendant's attendance. Under the circumstances, we cannot conclude that the trial court abused its discretion by admitting either the fact of the earlier convictions, the probationary conditions associated therewith, or defendant's participation in an alcohol abuse program for the limited purpose of proving implied malice.

Defendant nonetheless argues that the jury improperly used the evidence in finding him guilty of vehicular manslaughter with gross negligence. We find nothing in the record to support such a claim. ■■■ "Evidence that is relevant and admissible for one purpose may be admitted for such purpose even though it is inadmissible for another purpose. [Citations.] 'When evidence is admissible for a limited purpose . . . a party who could be adversely affected if the evidence is not so restricted is entitled to have the trial judge restrict the evidence to the limited purpose . . . and instruct the jury accordingly.' [Citation.]" (*People* v. *Eagles* (1982) 133 Cal.App.3d 330, 340 [183 Cal.Rptr. 784].) ■■■ Here, of course, the trial court instructed the jury on two separate occasions (see fn. 4, *ante*) that evidence of defendant's prior convictions could be used only for the purpose of finding implied malice. We must presume that the jury followed these admonitions and limited its consideration of the evidence to the second degree murder charge. (*People* v. *Gould* (1960) 54 Cal.2d 621, 627 [7 Cal.Rptr. 273, 354 P.2d 865]; *People* v. *Dacy* (1970) 5 Cal.App.3d 216, 221 [85 Cal.Rptr. 57].) In light of the fact that defendant was acquitted of this crime, we are convinced that the evidence was considered solely for the purpose for which it was admitted.

The judgment is affirmed.

Roth, P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied July 26, 1988, and appellant's petition for review by the Supreme Court was denied September 21, 1988.