Filed 7/25/13  P. v. Callion CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055485 |
| v. | (Super.Ct.No. FSB051311) |
| CHARLES GREGORY CALLION, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

David M. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Charles Gregory Callion killed two teenagers in a car accident while driving drunk and is serving a life term after a jury convicted him of the resulting

charges. Defendant challenges the trial court's decision to admit into evidence the details, rather than the mere fact, of his most recent drunk driving conviction from 2001. As discussed below, the trial court did not abuse its discretion when it admitted the evidence, and so we affirm the conviction.

## FACTS AND PROCEDURE

Around 4:15 a.m. on July 24, 2005, defendant was driving his Chevy Suburban the wrong way on the southbound Interstate-215 in San Bernardino. He collided head-on with a two-door Saturn driven by a 17-year-old boy, with a 16-year-old boy in the front passenger seat, and that boy's 17-year-old brother in the rear seat. The Saturn's driver swerved to avoid defendant, but defendant swerved in the same direction. The Saturn's driver died at the scene. His front seat passenger died at the hospital later that morning. The rear seat passenger suffered major injuries but survived.

Defendant was found unbuckled in the passenger seat of the Suburban, along with a nearly empty bottle of vodka. Defendant's eyes were red and watery, and he smelled of alcohol. Defendant's response to questions was not understandable because his words were mumbled and slurred. Defendant was found to have a blood alcohol level of 0.16 percent.

Defendant had prior drunk driving convictions from arrests in 1990, 1991, 1992, 1998, and 2000. When the accident occurred in 2005, he was on probation for the last conviction and his driver's license was still suspended.

2

On December 2, 2010,[1] the People filed a second amended information charging defendant with two counts of murder (Pen. Code, § 187, subd. (a)), two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), causing bodily injury while driving under the influence (Veh. Code, § 23153, subd. (a)), and causing bodily injury while driving with a blood alcohol level of 0.08 percent (Veh. Code, 23153, subd. (b)). As to the two bodily injury counts, the People further alleged defendant personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)) and proximately caused great bodily injury or death to more than one person (Veh. Code, § 23558).

On October 27, 2011, a jury found defendant guilty of all charges and found each of the enhancement allegations true. The jury set the degree of murder at second degree.

On January 20, 2012, the trial court sentenced defendant to a determinate term of eight years to be followed by an indeterminate term of 30 years to life, as follows: two consecutive terms of 15 years to life for the murder counts, plus three years consecutive for the causing great bodily injury while under the influence, plus three years consecutive for the great bodily injury enhancement to that count, plus two years consecutive for the multiple victim enhancement to that counts. The court stayed the sentences for all other counts and enhancements, including two terms of 15 years to life for gross vehicular manslaughter, pursuant to Penal Code section 654. This appeal followed.

---

[1] The People filed the felony complaint on August 4, 2005. Defendant was held to answer after the preliminary hearing on March 13, 2006. The People filed the first information on March 15, 2006 and the first amended information on October 1, 2007. The trial was continued numerous times, mostly on defense motion and sometimes by stipulation.

DISCUSSION

Defendant challenges the trial court's decision to allow the People to introduce into evidence the details of his 2001 drunk-driving conviction, rather than just the fact of the conviction. Although the court ruled the details were admissible because they are relevant to prove the implied malice necessary for second-degree murder, defendant contends the evidence was neither relevant to nor probative of his state of mind, was cumulative of other evidence, and was unduly prejudicial. As discussed below, we conclude the trial court did not abuse its discretion.

The details of the 2001 conviction were presented to the jury through the testimony of the highway patrol officer who arrested and cited defendant for drunk driving on March 21, 2001. Officer Turk testified that, a little after midnight on that date, he was on patrol and noticed a car parked along the side of a four-lane, divided road near Cabazon. The car had "significant damage to its hood, roof and front windshield." Defendant was the only person present and he was attempting to change a flat tire. Defendant told Officer Turk that he had gotten lost after leaving an Indian casino and fell asleep while driving. He went through a gap in the road's center divider, crossed into the opposing lanes of traffic, and hit a big rig trailer parked on the side of the road. The trailer was 30 feet long and had four to five feet of clearance. Defendant told the officer that he kept his left hand on the wheel but leaned to the right to protect his head and body. After the collision, defendant attempted to drive away, but had to stop about 200 feet later because he had a flat tire. Defendant did receive some cuts on the top of his left hand.

4

Officer Turk noticed that, while defendant was providing this information, defendant seemed to have trouble keeping his train of thought, slurred his words and spoke slowly. Defendant's breath smelled of alcohol, his eyes were red and watery, and, when asked to move a few feet away from the car, "his gait was a little unstable." Suspecting that defendant might be drunk, the officer performed some field sobriety tests and subsequently arrested defendant and issued him a citation.

Generally, evidence of a person's character or a trait of his or her character, including evidence of prior conduct by him or her, is "inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) This rule does not prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." (*Id.* at subd. (b); see *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*), superseded by statute on another point as stated in *People v Robertson* (2012) 208 Cal.App.4th 965, 991.) "The admissibility of such evidence turns largely on the question whether the uncharged acts are sufficiently similar to the charged offenses to support a reasonable inference of the material fact they are offered to prove." (*People v. Erving* (1998) 63 Cal.App.4th 652, 659-660.)

Even if the evidence is relevant for purposes of Evidence Code section 1101, subdivision (b), it may not be admitted if doing so would "'contravene other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]' [Citation.]" (*Ewoldt, supra*, 7 Cal.4th at p. 404.) The evidence "must have substantial

5

probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1123.) "Prejudice," in this sense, refers to evidence which tends to evoke an emotional bias against the defendant. (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.) We review the trial court's decision on these issues for an abuse of discretion. (*People v. Kipp* (1998) 18 Cal. 4th 349, 369.)

Here, the details of the 2001 accident were offered by the prosecution as evidence that defendant was subjectively aware of the risk to human life associated with drunk driving. The use of such evidence for this purpose is based upon the theory of vehicular homicide approved in *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), superseded by statute on another point as stated in *People v. Bradford* (1994) 22 Cal.App.4th 433, 439. In *Watson*, our state Supreme Court held that a person whose reckless driving kills another can be charged with second degree murder if there is sufficient evidence of implied malice. Implied malice, the court explained, can be shown "when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." (*Id*. at p. 296.) The court distinguished implied malice from gross negligence—the level of culpability required for vehicular manslaughter. (Pen. Code, § 192, subd. (c)(1).) "A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. [Citation.] However, a finding of implied malice depends upon a determination that the defendant

6

*actually appreciated* the risk involved, i.e., a *subjective* standard. (*Watson, supra*, 30 Cal. 3d. at pp. 296-297.)

Since *Watson*, numerous courts have upheld the use of evidence of prior driving conduct to show implied malice in vehicular second degree murder cases. (See, e.g., *People v. Ortiz* (2003) 109 Cal.App.4th 104, 116 (*Ortiz*); *People v. Brogna* (1988) 202 Cal.App.3d 700, 706-710; *People v. McCarnes* (1986) 179 Cal.App.3d 525, 532-533; *People v. Eagles* (1982) 133 Cal.App.3d 330, 340.) As stated by the *Ortiz* court: "[C]ourts have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway—whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator—sensitizes him to the dangerousness of such life-threatening conduct." (*Ortiz, supra*, 109 Cal.App.4th at p. 112.)

Here, contrary to the arguments set forth in defendant's brief, the evidence is relevant, probative, not cumulative, and not unduly prejudicial. As the cases cited above make clear, the evidence is relevant to show that defendant actually appreciated the risk of driving drunk and therefore acted with implied malice. The evidence is probative because defendant himself was injured in the 2001 accident, in which he was also driving on the wrong side of the road. Thus, the evidence tends to show that defendant was well aware that getting behind the wheel of a vehicle while drunk is dangerous to human life. The evidence is not merely cumulative because, although the jury was also told of the fact of several other drunk-driving convictions, it was important for the jury to know, not just that defendant had driven while drunk on numerous occasions, but that he had

7

actually crashed his car and been injured, however slightly. This added to the evidence of his subjective awareness of the danger of getting behind the wheel while drunk. As the court in *Ortiz* points out, it is the "'crashing of cars and the killing of people'" that increases a defendant's subjective awareness of the perils of driving badly. (*Ortiz, supra,* 109 Cal.App.4th at p. 116.) While defendant had not previously killed a person while driving drunk, this evidence that he had actually crashed his car and been injured in doing so was not cumulative to the mere fact of previous drunk driving convictions.

The test for whether evidence is unduly prejudicial is whether "it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008-1009.) Here, although the evidence is probative in that it shows defendant had previously crashed his car and injured a person, himself, after driving drunk on the wrong side of the road, it is not likely to "inflame the emotions of the jury." This is because, compared to the current accident in which he killed two innocent teenagers, the evidence to which he objects is relatively mild. Any inflaming of emotions would have come from the evidence of the current crash rather than the 2001 crash.

To conclude, the trial court did not abuse its discretion when it allowed the jury to hear the details of the 2001 crash. The evidence is highly relevant to and probative of

defendant's subjective awareness of the danger to human life when he chose to drive drunk, it was not cumulative, and it was not unduly prejudicial.

### DISPOSITION

The conviction is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

MILLER
J.