Filed 1/23/25  P. v. Bednarczyk CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082944 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN397866) |
| DEAN MOUNIR BEDNARCZYK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Brad A. Weinreb and Sim von Kalinowski, Judges.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

Dean Mounir Bednarczyk appeals from his conviction of gross vehicular manslaughter while intoxicated. He contends the trial court erred and violated his Fourteenth Amendment rights by admitting evidence of his prior conviction for driving under the influence and by declining his request to add pinpoint language to the standard jury instruction on causation. For reasons we explain, we see no error and accordingly affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2019, Bednarczyk was driving his pickup truck northbound on Interstate 5. It was around 1:00 in the morning and lightly raining, so it was quite dark. He entered a construction zone; there were orange constructions barrels and concrete barriers erected along parts of the highway and the speed limit was reduced to 55 miles per hour. Bednarczyk veered towards the shoulder traveling 63 miles per hour and, without applying the brakes, struck the left-rear of a sedan that was stopped on the shoulder with its brake lights on. The impact forced the sedan into a nearby concrete barrier. The driver of the sedan, Christopher Geritano, died of multiple blunt force injuries.

Responding officers observed that Bednarczyk smelled of alcohol, his eyes were red and watery, and his speech was slow and slurred. He admitted to drinking just two beers earlier that evening. A blood draw taken around 4:00 in the morning revealed a blood alcohol content (BAC) of .144 percent. His estimated BAC at the time of driving was between .16 and .21 percent.

The prosecution charged Bednarczyk with gross vehicular manslaughter while intoxicated (Pen. Code,[1] § 191.5, subds. (a); count 1), driving under the influence of alcohol causing injury (Veh. Code, § 23153,

---

[1] Further undesignated statutory references are to the Penal Code.

subd. (a); count 2), and driving with a measurable BAC causing injury (*id.*, subd. (b); count 3). It was alleged that he inflicted great bodily injury within the meaning of section 1192.7, subdivision (c)(8) as to all counts, and within the meaning of section 12022.7, subdivision (a) as to counts two and three. The prosecution alleged several aggravating sentencing factors as well.

The defense theory at trial was that Geritano was *not* stopped in the shoulder; he was partially or completely in the far-right lane. Given that it was dark and rainy, no driver—not even a sober one—could have avoided this unexpected hazard in the road. Accordingly, any gross negligence on his part did not proximately cause the collision. In support of this theory, the defense presented testimony from its own accident reconstruction expert. Based on his review of the evidence, the expert opined that the collision most likely occurred within the far-right lane. The defense also highlighted evidence that, shortly before the collision, Geritano was driving along the fog line—the solid painted line separating the far-right lane from the shoulder—with his hazard lights on. Then, upon impact, the sedan traveled laterally to the right and came to rest sideways across the fog line, with the front third of the car in the lane.

A jury ultimately convicted Bednarczyk on all three counts and found true the great bodily injury allegations. In a bifurcated proceeding, the trial court found true three aggravating sentencing factors: Bednarczyk had a high BAC (Cal. Rules of Court,[2] rule 4.408(a)); he suffered a prior conviction for driving under the influence (*ibid.*); and the offense involved a high degree callousness (rule 4.421(a)(1)). The court sentenced him to the midterm of six years on the gross vehicular manslaughter while intoxicated count.

---

[2] Further rules references are to the California Rules of Court.

3

It vacated the verdicts on and dismissed the remaining counts, which were lesser included offenses of gross vehicular manslaughter while intoxicated.

## DISCUSSION

### A. *Prior Evidence of Driving Under the Influence*

Bednarczyk claims the trial court erred and violated his Fourteenth Amendment right to due process by admitting evidence that he previously drove under the influence. He argues the evidence was not relevant to any issue at trial and only served to unfairly portray him "as a reckless individual who drinks too much and tends to drive after doing so."

#### 1. *Additional Background*

Before trial, the prosecution moved to admit evidence that Bednarczyk was previously convicted of driving under the influence. Specifically, in 2005, he pleaded guilty to driving with a BAC of .08 percent or more (Veh. Code, § 23152, subd. (b)). In pleading guilty, Bednarczyk signed forms advising him that driving under the influence was dangerous to human life. He also completed court-ordered classes that discussed the dangers of drinking and driving. The prosecution argued this evidence was relevant to show that Bednarczyk knew or reasonably should have known that driving under the influence created a high risk of death or great bodily injury, the mental state required for gross vehicular manslaughter while intoxicated.

Defense counsel objected, arguing the evidence was inadmissible character evidence and that any probative value was substantially outweighed by the risks of undue prejudice, confusing the issues, and misleading the jury. He also emphasized the age of the prior, suggesting it was unreasonable to infer that something Bednarczyk learned in 2005 would affect his mental state in 2019.

4

The trial court admitted the evidence, subject to a limiting instruction. The court agreed that the evidence was relevant to show knowledge of the dangers of driving under the influence. It found the age of the prior affected the weight of the evidence, not its admissibility. And the court did not consider it unreasonable to infer someone would remember being arrested, convicted, and taught about the dangers of drinking and driving in court-ordered classes—"a potentially life-changing experience for some people." It also noted that the evidence would not consume a significant amount of time to present and was not unduly prejudicial.

2.    *The Trial Court Reasonably Admitted The Evidence*

"Character evidence, sometimes described as evidence of propensity or disposition to engage in a specific conduct, is generally inadmissible to prove a person's conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).)" (*People v. Leon* (2015) 61 Cal.4th 569, 597.) "Evidence that a person committed a crime, civil wrong, or other act may be admitted, however, not to prove a person's predisposition to commit such an act, but rather to prove some other material fact" (*ibid.*) such as intent or knowledge (Evid. Code, § 1101, subd. (b)). Even if evidence of a prior offense is relevant for a noncharacter purpose, it may nevertheless be excluded "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; see also *Leon*, at pp. 598–599.) We review the trial court's decision to admit evidence under Evidence Code sections 1101, subdivision (b) and 352 for abuse of discretion. (*People v. Rogers* (2013) 57 Cal.4th 296, 326.) This means the court's ruling will not be disturbed unless it " 'exercised

5

its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Ibid*.)

Here, the trial court soundly determined that evidence of Bednarczyk's prior conviction was admissible to show he knew or reasonably should have known that driving under the influence creates a high risk of death or great bodily injury. "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (§ 191.5, subd. (a); see also CALCRIM No. 590.)

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036, citations omitted.) As the Supreme Court explained in *People v. Ochoa* (1993) 6 Cal.4th 1199, "[i]n determining whether a reasonable person *in defendant's position* would have been aware of the risks, the jury should be given relevant facts as to what defendant knew, including his actual awareness of those risks." (*Id*. at p. 1205.) Moreover, "if the evidence showed that defendant *actually appreciated the risks* involved in a given enterprise, *and nonetheless proceeded* with it, a finding of gross negligence (as opposed to simple negligence) would be appropriate whether or not a reasonable person in

6

defendant's position would have recognized the risk." (*Ibid*.) Evidence of a defendant's prior conviction for driving under the influence and participation in court-ordered classes is thus admissible in trials involving gross vehicular manslaughter while intoxicated because it is relevant to show the defendant's awareness of the risks involved in drunk driving. (*Id*. at pp. 1204–1206.)

The same is true here. Bednarczyk offers no compelling reason for us to depart from *Ochoa*. He maintains that the 2005 conviction was too old to be probative of his mental state at the time of the 2019 offense. To be sure, the probative value of prior offense evidence "dissipates over time." (*People v. Williams* (2018) 23 Cal.App.5th 396, 422.) But as the trial court pointed out, it is completely reasonable to infer that someone would remember that drinking and driving is dangerous after being arrested and convicted of driving under the influence and attending court-ordered classes on that very topic. Indeed, "driving under the influence constitutes a criminal offense precisely because it involves an act which is inherently dangerous." (*People v. Brogna* (1988) 202 Cal.App.3d 700, 709.)

We likewise see nothing irrational in the trial court's determination that the probative value of the prior offense evidence was not substantially outweighed by the considerations set forth in Evidence Code section 352. The evidence admitted at trial was limited. In testimony comprising just a few pages of the reporter's transcript, a California Highway Patrol Officer testified that he arrested Bednarczyk in 2005 for driving under the influence. During the arrest, Bednarczyk admitted that he drank two beers and felt "a little" effect from the alcohol, but noted that he "waited a while before [he] drove." The court did not allow the prosecutor to question the officer about the circumstances leading up to the arrest. The prosecution also presented the jury with superior court documents related to the prior, including a

7

charging document, change-of-plea forms, and court orders for Bednarczyk to attend classes.  Given the brief and relatively benign nature of this evidence—insofar as it did not involve a collision or harm to anyone else—it cannot reasonably be characterized as unduly time consuming or prejudicial. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 405 ["the potential for prejudice" is "decreased" where "[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses"].)

Moreover, the trial court instructed the jurors with CALCRIM No. 375, which told them they could consider evidence of the prior conviction "for the limited purpose of deciding whether" Bednarczyk (a) "acted with gross negligence" or (b) "knew that his actions would create a high risk of death or great bodily injury."  The instruction specifically cautioned the jurors *not* to "consider this evidence for any other purpose" or "conclude from this evidence that [Bednarczyk] has a bad character or is disposed to commit crime."  This limiting instruction effectively "eliminated any danger of 'confusing the issues, or of misleading the jury.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 25–26, quoting Evid. Code, § 352.)  We must presume that the jury followed the trial court's limiting instruction. (*Lindberg*, at p. 26.)

In sum, the trial court thoughtfully and appropriately exercised its discretion to admit limited evidence of Bednarczyk's prior conviction.  Thus, there was no denial of his right to due process. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1289 [" '[t]he "routine application of state evidentiary law does not implicate [a] defendant's constitutional rights" ' "].)

## B.   *Pinpoint Instruction on Causation*

Bednarczyk also contends the trial court violated his Fourteenth Amendment rights to due process and to present a complete defense by

declining to modify the standard instruction on causation (CALCRIM No. 240) to add language pinpointing the defense theory of the case.

1. *Additional Background*

During the jury instruction conference, defense counsel asked the trial court to add language to the standard instruction on causation (CALCRIM No. 240).[3]  The requested language, taken from *People v. Roberts* (1992) 2 Cal.4th 271 at pages 321 to 322 (*Roberts*) was as follows:  "A result cannot be the natural and probable cause of an act if the act was unforeseeable.  The abnormality of the event is an element to be considered in evaluating causation."  Counsel wanted to add this language because foreseeability was an issue in the case, but the standard instruction did not use that term. The prosecutor objected, noting that *Roberts* was distinguishable insofar as it dealt with the intervening acts of a third party.  The prosecutor otherwise maintained that the standard instructions completely and correctly explained causation for the jury.

The court declined to modify the instruction.  It agreed with the prosecutor that *Roberts* was "extremely unusual and different from" the facts and issues here.  The court also found that, in addition to CALCRIM No. 240,

---

3       CALCRIM No. 240 provides:  "An act causes injury if the injury is the direct, natural, and probable consequence of the act and the injury would not have happened without the act.  A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence.  [¶]  There may be more than one cause of injury.  An act causes injury, only if it is a substantial factor in causing the injury.  A substantial factor is more than a trivial or remote factor.  However, it does not have to be the only factor that causes the injury."

9

the concept of foreseeability was adequately explained in the instruction on gross vehicular manslaughter while intoxicated (CALCRIM No. 590).

## 2. *The Trial Court Properly Refused To Modify The Instruction*

" ' "[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case." In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense . . . ." ' The court, however, "may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing, or if it is not supported by substantial evidence." ' " (*People v. Bivert* (2011) 52 Cal.4th 96, 120, citations omitted.) We independently review claims of instructional error. (*People v. Jones* (2024) 105 Cal.App.5th 83, 97.)

In *Roberts*, the defendant participated in a group stabbing of a fellow prison inmate. (2 Cal.4th at pp. 294–295.) The inmate suffered numerous wounds and "fell rapidly into shock from" blood loss. (*Id*. at pp. 295–296.) Nevertheless, he found a knife and, in pursuit of a codefendant, "ran or staggered some distance up a flight of stairs to the second floor, where he plunged the knife into the chest of a prison guard," killing him. (*Id*. at p. 295.) The inmate died shortly thereafter. (*Ibid*.) The defendant was convicted of first degree murder of the inmate and the guard. (*Id*. at p. 294.)

An important issue in the trial court and on automatic appeal was whether the defendant proximately caused the guard's death. (*Roberts*, *supra*, 2 Cal.4th at pp. 296, 315.) Relatedly, the defendant argued on appeal that the trial court erred in instructing the jury on proximate causation. (*Id*. at p. 315.) In critical part, the trial court instructed the jury:

10

" 'A defendant is the proximate cause of the death of another even though the immediate cause of the death is the act of a third person, if the third person is no longer a free moral agent as the direct result of the defendant's unlawful act. [¶] A defendant who . . . unlawfully inflicts an injury upon a third person is criminally responsible for the acts of that person while in delirium or a similar state of unconsciousness where such condition is the direct result of the defendant's unlawful act. [¶] *It is immaterial that the defendant could not reasonably have foreseen the harmful result. . . .'* " (*Roberts, supra,* 2 Cal.4th at pp. 315–316.)

The Supreme Court held the instruction was incorrect insofar as it directed the jurors not to consider whether the attack on the guard was foreseeable. (*Roberts, supra,* 2 Cal.4th at p. 320.) It was in this context that the court made the observation that Bednarczyk's counsel referenced below: "A result cannot be the natural and probable cause of an act if the act was unforeseeable. (See Perkins & Boyce, [Criminal Law (3d ed. 1982),] p. 824 [the abnormality of a response is an element to be considered in evaluating proximate cause].)" (*Roberts,* at pp. 321–322.) In other words, the jury needed to decide whether the inmate stabbing the guard was a natural and probable consequence of—that is, a foreseeable result of—the defendant stabbing the inmate. (*Ibid.*) The trial court erred in explicitly instructing the jury *not* to consider that question. (*Ibid.*)

This passage in *Roberts,* specifically directed to the intervening act of a third party, is of little or no relevance to this case, where the jury was never instructed to ignore foreseeability. Here, the trial court instructed the jury on the concept of proximate causation to the extent warranted by the facts of this case. As CALCRIM No. 590 makes clear, gross vehicular manslaughter while intoxicated requires proof that "[t]he defendant's grossly negligent

11

conduct caused the death of another person." That instruction goes on to explain causation:

> "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence." (CALCRIM No. 590.)

This language was repeated in CALCRIM No. 240 (except that it used the term "injury" instead of "death"). While these instructions do not use the word "foreseeable," they describe the concept of foreseeability. (See *People v. Carney* (2023) 14 Cal.5th 1130, 1143 [language requiring "that an injury or death be a direct, natural, and probable consequence of a defendant's act 'necessarily refers to consequences that are reasonably foreseeable' "].) Thus, to the extent Bednarczyk's counsel wanted the trial court to add language to CALCRIM No. 240 to ensure the jurors understood the concept of foreseeability, the requested language was redundant.

Because the trial court effectively instructed the jury on foreseeability, and the language requested by the defense was otherwise unsupported by the evidence in this case, the court properly refused to modify CALCRIM No. 240. There was no error or violation of Bednarczyk's constitutional rights.

## DISPOSITION

The judgment is affirmed.

DATO, Acting P. J.

WE CONCUR:

DO, J.

RUBIN, J.

13